**In re William Joseph TRUITT, Debtor.**

**Roger W. MOISTER, Jr., Trustee,**
**Plaintiff,**

**v.**

**CITIZENS TRUST BANK, Defendant.**

Bankruptcy No. 80–00359A.
Adv. No. 80–0393A.

United States Bankruptcy Court,
N. D. Georgia,
Atlanta Division.

April 3, 1981.

16

William Joseph Truitt, pro se.

Roger W. Moister, Jr., Atlanta, Ga., for plaintiff.

Donald P. Edwards, Thomas, Kennedy, Sampson & Edwards, P. C., Atlanta, Ga., for defendant.

HUGH ROBINSON, Bankruptcy Judge.

## ORDER

The instant adversary proceeding was commenced by the filing of a "Complaint to Determine the Validity, Priority and Extent of Lien" filed by the trustee in bankruptcy on May 2, 1980. This matter came on regularly to be heard before this Court on September 4, 1980 in Atlanta, Georgia. Having considered the documentary and

testimonial evidence adduced at trial, the arguments and briefs of the parties and the pleadings on file, the Court makes the following decision.

## FINDINGS OF FACT

1. William Joseph Truitt, ("Truitt"), was formerly the owner of the Passport Restaurant and Lounge, ("Passport").

2. Truitt and the Passport shared a bank account in the Citizens Trust Bank, ("Defendant").

3. From 1969 to 1971 Truitt obtained several loans from Defendant. Truitt's present loan indebtedness to Defendant is $22,638.75.

4. On February 13, 1970 Defendant loaned Truitt the sum of $10,620.00. This loan is evidenced by promissory note # 16,375.

5. A deed to secure debt was executed by Truitt on February 12, 1970 to secure note # 16,375 as well as all other past and future indebtedness owed by Truitt to Defendant.

6. The debt represented by note # 16,375 has been paid.

7. On several occasions Truitt wrote overdrafts on his account with Defendant. These overdrafts were paid by Defendant, and Truitt's account was subsequently debited for the amounts so paid. The following overdrafts were paid by Defendant:

(a) Check from Truitt to Passport dated August 12, 1969 for the amount of $2,500.00.

(b) Check from Passport to Atlanta Grocery Company dated August 19, 1969 for the sum of $598.29.

(c) Check from Passport to Glover/Phillips, Inc. dated September 8, 1969 for the sum of $1,225.22.

(d) Check from Passport to Iowa Beef Purveyors, Inc. dated August 20, 1969 for the sum of $720.94.

(e) Check from Passport to Atlas Neon Sign Company dated August 29, 1969 for the sum of $1,330.43.

(f) Check from Passport to American Fruits dated September 3, 1969 for the sum of $382.77.

(g) Check from Passport to Citizens Trust Company dated August 22, 1969 for the sum of $1,635.00.

(h) Check from Passport to The Citizens & Southern National Bank dated September 2, 1969 for the sum of $2,067.10.

The amounts of these overdrafts total $10,459.75.

8. Truitt filed a petition under Chapter 7 of Title 11 of the United States Code on February 5, 1980.

9. On May 2, 1980 Roger W. Moister, Jr., ("Plaintiff"), the trustee in bankruptcy, filed a complaint to determine the validity, priority and extent of Defendant's lien. This matter was heard before the Court on September 4, 1980.

## APPLICABLE LAW
## VALIDITY OF LIEN

It is argued by Plaintiff that the security deed held by Defendant is unenforceable for the reason that the note evidencing the underlying obligation was not produced by Defendant at the hearing. Plaintiff relies heavily on the case of *Weems v. Coker*, 70 Ga. 746 (1883). In that case the Georgia Supreme Court held that a creditor could not foreclose a mortgage which secured a note unless the note was produced or its absence accounted for. Plaintiff would have the Court interpret this case to hold that unless the actual note evidencing an obligation is produced, a creditor may not foreclose on collateral securing that note. However the holding of *Weems* is not so stern. It was said by the court:

"When attention was called to the fact that the note had not been introduced, and the motion [for nonsuit] in question was made, if the note had been present, or if it had been in the custody, or under the control of the plaintiff, and absent for any cause, or if it had been lost or destroyed, an announcement of either of these facts would have satisfied the defendant's objection and have let in other

proof of its existence, or have furnished ground for such a disposition of the case as would have protected the rights of the parties."

70 Ga. at 748.

Under the ruling of *Weems* the existence and terms of a lost note may be proved. Generally where a party bases a right upon an instrument which has been lost or destroyed, he may prove the contents of the instrument by secondary evidence. *Borenstein v. Blumenfeld*, 151 Ga.App. 420, 260 S.E.2d 377 (1979); *Trice v. Adams*, 33 Ga.App. 257, 125 S.E. 878 (1924); *Horne & Ponder v. O.B. & E.J. Evans*, 31 Ga.App. 370, 120 S.E. 787 (1923); *Continental Fertilizer Company v. Pass*, 7 Ga.App. 721, 67 S.E. 1052 (1910).

Mr. Edward A. Wood, Vice President of Defendant, testified that after a diligent search he was unable to locate note # 16,375 which evidences the loan transaction alleged to be consideration for the security deed. Since the note has been paid it is quite possible that the instrument was returned to Truitt. Regardless of what actually happened to the note, the Court determines that Defendant's failure to produce it at the hearing has been satisfactorily explained by Mr. Wood's testimony. Under these circumstances secondary evidence is permissible to prove the existence and terms of note # 16,375.

In accordance with the foregoing the Court concludes that the deed to secure debt held by Defendant is not unenforceable due to Defendant's failure to produce the note representing the underlying obligation.

Plaintiff contends that the subject deed to secure debt is invalid for the reason that it was executed for no present consideration.

Ga.Code Ann. § 29–101 provides:

"A deed to lands must be in writing, signed by the maker, attested by at least two witnesses, and delivered to the purchaser, or someone for him, and be made on a valuable or good consideration. The consideration of a deed may always be inquired into when the principles of justice require it."

Therefore, to be valid, a deed must be made on valuable or good consideration.

Plaintiff points out that the security deed recites as consideration the sum of $1,000.00. On the second page of the security deed, where as space has been provided for the recording of the amount of the debt secured, no amount has been filled in. There is no evidence in the record that a loan in the amount of $1,000.00 was ever made by Defendant to Truitt. For this reason Plaintiff argues that no present consideration was given to Truitt in exchange for the execution of the security deed.

It is not necessary for a deed to secure debt to specify the amount of the debt secured. *Troup Company v. Speer*, 23 Ga.App. 750, 99 S.E. 541 (1919); *In re American Ventures, Inc.*, 340 F.Supp. 279 (N.D.Ga.1971) affirmed 457 F.2d 974 (5th Cir. 1972). Therefore the possibility that the stated consideration inaccurately reflects the amount of consideration actually given by Defendant has no bearing on the validity of the security deed. Likewise, the failure to record the amount of the debt secured on the second page of the security deed does not render that instrument invalid.

At the hearing of September 4, 1980 Defendant presented testimonial evidence concerning consideration through Joel Stokes, an employee of Defendant at the time the security deed was executed. From his personal recollection of the transaction, Mr. Stokes testified that the deed was taken by Defendant as additional collateral for a debt already owed by Truitt to Defendant. The security deed also secured an advance in the amount of $10,620.00 made to Truitt on February 13, 1970. This transaction is recorded on a ledger reflecting all of Truitt's loan debts which was admitted into evidence as Defendants Exhibit # 1.

Mr. Wood testified as to the reason that the security deed is dated February 12, 1970 and the loan transaction is dated February 13, 1970 on the loan ledger. He testified

that if a transaction occurs late in the day after what is referred to as the "cut-off period" the transaction is completed the following day.

■ After careful consideration of the testimony referred to above the Court concludes that the discrepancy between the date of the loan transaction and the date of the security deed was satisfactorily explained by Mr. Wood and further concludes that the security deed was given for present consideration consisting of the $10,620.00 loan.

It is undisputed that Defendant did not pay the Georgia intangible tax on the security deed in question. Plaintiff contends that due to Defendant's failure to pay this tax, the security deed is invalid.

Under Ga.Code Ann. § 91A–3202 every holder of a long term note secured by real estate must pay an intangible recording tax prior to the recording of the security instrument. A long term note is defined as one which falls due more than three years from the date of the note or the date of the security instrument. Ga.Code Ann. § 91A–3201. Failure to pay this tax bars the creditor from collection of the debt by suit, foreclosure, exercise of power of sale or otherwise. Ga.Code Ann. § 91A–3209(a). Plaintiff contends that Defendant cannot collect the indebtedness secured by the security deed because the intangible recording tax was not paid. Because the debt allegedly could not be collected, Plaintiff argues that the security deed is invalid.

At one time national banks and savings and loan associations were exempt from the Georgia intangible recording tax. *Gorlin v. First National Bank of Chattooga County*, 150 Ga.App. 637, 258 S.E.2d 290 (1979). Banks chartered under the laws of the State of Georgia were also subject to the exemption. *Washington Loan & Banking Company v. Golucke*, 212 Ga. 98, 90 S.E.2d 575 (1955). This exemption was repealed in 1973. Ga.Laws 1973, p. 924. However, the provisions of Ga.Code Ann. § 91A–3209 do not apply to instruments acquired at a time when the holder of the note or instrument was exempt from payment of the intangible tax. Ga.Code Ann. § 91A–3209(d).

■ The loan ledger indicates that none of Truitt's loan transactions with Defendant occurred later than 1971, a time when defendant was exempt from payment of the intangible tax. Therefore Defendant's failure to pay the intangible tax on these notes in no way affects the enforceability of the security deed.

After considering the arguments of the parties and the evidence submitted at the hearing, the Court is compelled to conclude that the security deed executed by Truitt and held by Defendant is valid and enforceable.

## EXTENT OF LIEN

Although it is not necessary for a security deed to specify the amount secured, where an amount is specified the debt secured is limited to the named amount unless the deed gives notice to third persons that other indebtedness is also secured. *Troup Company v. Speer, supra.* The deed to secure debt involved herein states that the consideration therefor is $1,000.00. However the deed also contains the statement, "This instrument shall secure any and all past, present and future indebtedness due or to become due by grantor herein to grantee herein regardless of the manner in which same may be evidenced." This sentence gives notice that the stated consideration is not the only indebtedness secured by the deed. Therefore Defendant's lien is not limited to $1,000.00.

■ To prove the extent of the lien Defendant relied on the loan ledger and introduced several checks representing overdrafts on Truitt's account. Although the loan ledger may have been susceptible to an objection based on the best evidence rule, Plaintiff did not object to the use of the ledger as evidence of the extent of Defendant's lien. Evidence received without objection becomes part of the evidence in the case and is usable as proof to the extent of the rational persuasive power it may have. *McCormick, Evidence,* 1972, § 54.

Mr. Wood testified·that the loan ledger reflects all of Truitt's loan transactions and depicts Truitt's current indebtedness. He further testified that in order to determine Truitt's current loan indebtedness he would refer only to the loan ledger. From this testimony the Court is convinced that the loan ledger reliably evidences the actual loan indebtedness presently due by Truitt to Defendant.

After reviewing the evidence the Court finds that the extent of Debtors lien is $33,098.50 which consists of $22,638.75 for Truitt's loan indebtedness and $10,459.75 for the payment of overdrafts on Truitt's account.

Plaintiff has instituted proceedings in this Court to sell the real property which secures the indebtedness of Truitt to Defendant. The Court will reserve the question of the priority of Defendant's lien until such time as the existence and priority of any other liens on this property may be determined.

### CONCLUSIONS OF LAW

1. The security deed executed by Truitt on February 12, 1970 and held by Defendant is valid and enforceable.

2. The extent of Defendant's lien is $33,098.50.

It is therefore

ORDERED that defendant has a valid lien against the property which is the subject matter of the deed to secure debt executed by Truitt on February 12, 1970; and it is further

ORDERED that the extent of Defendant's lien is $33,098.50.