HARRY L. STOUT, PLAINTIFF IN ERROR, v. LAMBERT HUMPHREY, DEFENDANT IN ERROR.

Submitted March 24, 1903—Decided June 15, 1903.

1. The tenth section of the statute of frauds, which provides that no broker or real estate agent, selling lands on account of the owner, shall be entitled to receive any commission for such sale unless the authority for selling is in writing, signed by the owner or his authorized agent, is aimed at, and applies to, any person who acts as broker or real estate agent in the very transaction out of which the claim for compensation arises.

2. In the absence of a written contract for the sale or exchange of real estate, there is an absence of right to compensation for services, and where there is no written contract, a subsequent express promise to pay is without consideration, and void, under the statute of frauds. *Gen. Stat.*, p. 1604, § 10.

On error to the Hunterdon Circuit Court.

The action was on contract and brought by the plaintiff, an attorney-at-law, against the defendant, a hotel proprietor in Flemington, to recover the sum of $1,175. The declara-

tion contained the common counts only, and annexed thereto was the following bill of particulars:

"The following is a bill of particulars of the demand whereupon the annexed declaration is founded:

"For legal advice and services; traveling expenses and disbursements done, performed and expended by plaintiff as attorney for defendant in and about the sale of the property of the defendant known as the Union Hotel, situated in the village of Flemington, in the county of Hunterdon, and State of New Jersey, between the first days of May and August, A. D. 1899...................... $1,200 00

CR.

"August, 1899, by cash paid on account........ 25 00

Balance due.................... $1,175 00"

It appears from the testimony at the trial that, some time in the month of March, 1899, the plaintiff had a conversation with the defendant, in which conversation the defendant said that he desired to sell his hotel property, and the plaintiff testified that "Mr. Humphrey, in the conversation in reference to the disposition of his property, wanted to know what would be the best thing to do in order to dispose of the property, and he talked about the price, what he wanted for it, what the receipts were per day, the manner in which the hotel was being run; that his wife was down to his residence and was unable to get to the hotel, and he had to devote part of his time there and had to look after the entire management and control of the hotel; and I said to him, 'The property had better be advertised in the New York papers;' that I knew of no one in the market here, and I advised him to advertise in the New York papers; and he said, 'Will you advertise that property for sale and look after the correspondence?' And

I told him it would be considerable work; and he said, 'How much will you charge?' And I said, 'If you get $45,000 for this hotel, it is a big price, and I may have to go away some, and there is considerable work attached to it, and you ought to give me $1,500.' He said, 'That is too much;' he said, 'If you will keep me straight in this transaction and I sell the property, I will give you $1,000 and the lot on Elwood avenue.' I says, 'Under the circumstances, I will undertake it;' and he said, 'Understand, if I don't sell it, you don't get anything.' "

The plaintiff then detailed the services performed by him. It then appeared that, in August following, the defendant sold the property. Subsequently the plaintiff had a conversation with the defendant, after he had given possession of the property to the purchaser, in which the defendant said that the deal was changed a little, and that the purchaser was to take three years to pay for it, and that he had not received much money; then, to quote the testimony of the plaintiff, " 'Now,' he says, 'to pay you now would be giving you a good deal of money;' he says, 'Mr. Chamberlain might not make a success of the business—he may die—then I would be that much money out, but,' he says, 'I will give you some on account; then,' he says, 'when Chamberlain takes his deed I will pay you the balance;' * * * and he then gave me $25 on account; and I said, 'Give me a paper to show the balance due me;' and he said, 'My word is as good as my bond;' and I says, 'All right, Mr. Humphrey;' and he said, 'I will pay you when he takes the deed.' "

After the delivery of the deed the plaintiff demanded of the defendant the balance he claimed to be due in cash and the transfer of the lot, when the defendant refused to pay him anything.

At the close of the plaintiff's case, Pitney, J., directed a nonsuit, on the ground that the contract sued on was void, so far as it related to services rendered by the plaintiff as a real estate broker, because the contract was not in writing, and so was in violation of section 10 of the statute of frauds and perjuries.

For the plaintiff in error, *Willard C. Parker* and *H. Burdett Herr.*

For the defendant in error, *George H. Large.*

The opinion of the court was delivered by

VROOM, J. The plaintiff in error relies upon the following assignments of error:

*First.* That the said justice before whom the said cause was tried nonsuited the plaintiff on the ground that, under section 10 of an act entitled "An act for the prevention of frauds and perjuries," approved March 27th, 1877, the action of the plaintiff could not be sustained, and therein erred in law. *Gen. Stat., p.* 1604.

*Second.* That the said justice sustained the motion of nonsuit made by the defendant, when the judgment should have been to overrule said motion and to give judgment thereon in favor of the plaintiff, and therein erred in law.

The tenth section of the statute of frauds and perjuries first became a part of our statute law in 1873, and the act then passed was entitled "An act to regulate the commissions of brokers and real estate agents in the sale of land," and, as passed, was in the following words:

"That no broker or real estate agent, selling land on account of the owner, shall be entitled to receive any commission for the sale or exchange of any real estate, except the authority for selling is in writing and signed by the owner or his authorized agent, and the rate of commission on the dollar shall have been stated in such authority." *Pamph. L.* 1873, *p.* 50.

In 1874 that act was included in the statute "For the prevention of frauds and perjuries," in the revision of that year (*Rev., p.* 446), constituting section 10 of that act, and is substantially identical with the statute above quoted.

The meaning of this section, in so far as it prescribes that there must be a written authority to entitle the broker or real estate agent to commissions upon the sale or exchange of property, and the object of such requirement, is too plain for contention. The question raised is as to whom do the

provisions of the act apply. The insistment of the plaintiff in error is that this section is expressly confined to real estate agents or brokers and to contracts authorizing them to dispose of lands of owners, and that an attorney-at-law, not carrying on commonly a real estate business, and who is employed, in part at least, by reason of his being such attorney, to render legal services in and about the sale of real property, is not within the meaning of this section.

The learned trial judge, we think, tersely and correctly interpreted this section of the statute when he said: "But, as I read the statute, both in its letter and manifest policy, it is aimed at any person who acts as broker or real estate agent in the very transaction in question out of which the claim to compensation arises. It would be a very narrow construction of the statute to say that it applied only to him who ostensibly and usually carried on the business of brokerage or a real estate business so-called."

A broker is defined to be "a middleman or agent, who, for a commission or rate per cent. on the value of the transaction, negotiates for others the purchase or sale of stocks, bonds, commodities, or property of any kind, or who attends to the doing of something for another." *Cent. Dict.*

It is a well-known fact that the business of a broker and that of a real estate agent is often carried on by many who never hold themselves out or advertise as such, and, under the name of insurance agents, justices of the peace and even attorneys are constantly "engaged in selling or exchanging land for or on account of the owner," and to give a construction to this statute which would except them from its provisions would be a clear violation of the policy which caused its enactment.

It was contended, on the part of the plaintiff in error, that an attorney does not cease to be such because his employment requires services not strictly professional together with other services which are professional, and the case of *Savings Bank* v. *Ward,* 10 *Otto* 195, was cited as authority for this proposition. I do not understand that this was involved in the decision of that case. What was there decided was that,

in an action against an attorney for negligence, proof of employment and the want of reasonable care and skill in the performance of the stipulated services are prerequisites to the maintenance of the action, and that these matters must be alleged and proved. But conceding that the attorney does not cease to be such when his employment is a service not strictly professional, and, as in this case, was that of a broker or real estate agent, the mere fact that he is an attorney will not relieve him from the provisions of the statute which require the written authority of the owner for the sale or exchange of land before he will be entitled to any commissions for such sale or exchange.

Again, the plaintiff contends that the defendant in this case did not give his attorney any power or authority to sell his property; that his only employment was to aid him in making a sale of the property. The effect of this would be to limit the operation of the section to those who have the authority to sell the property and bind the defendant by the contract. That would be, indeed, but a narrow construction of the terms "selling or exchanging," and exclude all who negotiate sales, seek purchasers and secure them, as is customary with real estate agents and brokers, and for which services commissions are always charged and allowed. I concur with the views of the trial judge that "a construction which would take out of the statute all persons except those who are empowered to sell, in the sense of carrying the sale into effect, would defeat the purpose of the statute."

But the plaintiff insists that, conceding that the contract is within the statute, the defendant has waived any benefits by a subsequent promise to pay, made verbally to the plaintiff and detailed in the statement prefixed to this opinion. He further insists that thereby the defendant acknowledged his liability, agreed to pay the commissions demanded, and that contract renders him liable in this action.

The difficulty with this contention is that the subsequent promise to pay for the services is entirely without consideration, and therefore void. The tenth section of the statute of frauds does not merely say that "no action shall be main-

tained," but that "no broker or real estate agent selling or exchanging land for or on account of the owner shall be entitled to any commission for the sale or exchange of any real estate, unless the authority for selling or exchanging such land is in writing, signed by the owner," &c. It therefore follows, as correctly held by the trial judge, "the statute declared a public policy, viz., in the absence of written contract there shall be an absence of right to compensation for services, and so, where there is no written contract, a subsequent express promise to pay for the services is entirely devoid of consideration."

This principle was fully considered in the early case of *Loyd* v. *Lee,* 1 *Str.* 94. There "a married woman gave a promissory note as a *feme sole,* and, after her husband's death, in consideration of forbearance, promised to pay it, and in an action against her it was insisted that though she being under coverture at the time of giving the note, it was voidable for that reason, yet by her subsequent promise, when she was of ability to make a promise, she had made herself liable, and the forbearance was a new consideration.

But the Chief Justice (Hardwicke) held the contrary, and that the note was not barely voidable, but absolutely void; and forbearance, where originally there was no cause of action, is no consideration to raise an *assumpsit.*"

And again, in the later case of *Cockshot* v. *Bennett,* 2 *T. R.* 763, where it was held that "if all the creditors of an insolvent consent to accept a composition for their respective demands upon an assignment of his effects by a deed of trust, to which they are all parties, and one of them, before he executes, obtains from the insolvent a promissory note for the residue of his demand by refusing to execute till such note be made, the note is void in law as a fraud on the rest of the creditors; and a subsequent promise to pay it is a promise without consideration, which will not maintain an action."

In commenting on these cases the author of the well-known and elaborate note to *Wennall* v. *Adney,* 3 *Bos. & P.* 247, says: "It is clear that if a contract between two parties be *void,* and not merely *voidable,* no subsequent express promise will operate to charge the party promising, even though he

has derived the benefit of the contract. Yet, according to the commonly received notion respecting moral obligations, and the force attributed to a subsequent express promise, such a person ought to pay. An express promise, therefore, as it should seem, can only revive a precedent good consideration which might have been enforced at law through the medium of an implied promise had it not been suspended by some positive rule of law, but can give no original right of action if the obligation on which it is founded never could have been enforced at law, though not barred by any legal maxim or statute provision."

In the case of *Beaumont* v. *Reeve,* 8 *Q. B.* 483, 487, the rule is thus stated, and it is quoted by Mr. Chitty in the text of his work on contracts (1 *Chit. Cont.* 54), "that an express promise cannot be supported by a consideration from which the law could not imply a promise, except where the express promise does away with a legal suspension or bar of a right of action which, but for such suspension or bar, would be valid."

In *Freeman* v. *Robinson,* 9 *Vroom* 383, Mr. Justice Depue, after a learned discussion of the question, says that the principle enunciated in the note above cited to Wennall *v.* Adney and adopted by the judges of the Queen's Bench in *Beaumont* v. *Reeve, supra,* "may now be considered as the settled law in the English courts," and "that it has also been approved and made the basis of judicial decision quite generally in the courts of this country." Citing cases.

The exceptions to the rule are only those, where there was originally a consideration of benefit to the promisor, from which a promise would have been implied capable of legal enforcement, if some statutory provision or positive rule of law had not debarred the party from legal remedy, and under these are promises to pay debts, the recovery of which is barred by the statute of limitations, a promise by a man after he becomes of age to pay a just debt contracted during minority, but not for necessaries; a promise by a bankrupt after his certificate to pay his debts in full, and a promise to perform a secret trust, or a trust void for want of writing under the statute of frauds. *Freeman* v: *Robinson, supra.*

The contract here sued upon, therefore, having been in contravention of the statute was not *voidable,* but *void;* no subsequent promise could operate to charge the party promising therewith.

The case of *Griffith* v. *Daly, 27 Vroom* 466, is relied upon by the plaintiff as an interpretation of this statute adversely to the views above expressed; but the opinion of Mr. Justice Dixon distinctly states that the plaintiff "did not sue to recover a commission for the sale or exchange of any real estate, nor was the defendant's agreement, on which the suit rested, one to pay him for such service." This being the case, and the present suit being admittedly brought for services "in and about the sale of the property of the defendant," it is difficult to perceive the pertinency of the insistment that the decision in this case should be considered as an interpretation of this statute.

The plaintiff further insists that he was entitled to immediate payment for his services, so far as the sale of the personal property was concerned, and for legal services. The trial judge properly held that so far as those services, they being of a character not obnoxious to the statute of frauds, were joined together in an indivisible contract with services that were obnoxious to the statute, the whole contract would be void; that there could be no recovery under the bill of particulars in the case, for the bill of particulars is inconsistent with a recovery on a *quantum meruit.* The bill of particulars, being based on the contract, in the absence of an amendment, there could be no recovery. The plaintiff declined to ask for an amendment.

There was no error in the ruling of the trial judge and the plaintiff was properly nonsuited.

The judgment below should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, GARRISON, FORT, GARRETSON, HENDRICKSON, SWAYZE, BOGERT, VREDENBURGH, VOORHEES, VROOM. 13.

*For reversal*—None.