[No. 7913. Department One. October 4, 1909.]

### B. L. MUIR, *Respondent,* v. M. FRANCIS KANE et al., *Appellants.*[1]

CONTRACTS—CONSIDERATION—MORAL OBLIGATION—FRAUDS, STATUTE OF. An oral contract with a broker to pay commissions on the sale of real estate, void under the statute of frauds, raises a moral obligation which is sufficient consideration to support a subsequent written agreement to pay the same, after the rendition of the services.

Appeal from a judgment of the superior court for King county, Griffin, J., entered May 15, 1908, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action to recover a broker's commission. Affirmed.

*Rice & Frank,* for appellants.

*F. J. Carver,* for respondent.

[1]Reported in 104 Pac. 153.

FULLERTON, J.—The respondent brought this action to recover of the appellants the sum of $200, alleged to be due pursuant to a written agreement executed and delivered to him by the appellants, whereby they agreed to pay him the sum of $200 for his services in selling for appellants a certain tract of real property. Issue was taken on the complaint and a trial had thereon, which resulted in a judgment in his favor for the amount claimed to be due. The case was tried by the court sitting without a jury. No question is raised as to the correctness of the facts found, but the case is here on the question whether these facts justify the judgment of the court.

The court's findings of fact are as follows:

"(1)    That now and at all times herein referred to the plaintiff is and was doing a general real estate business in Seattle, Washington, under the firm name and style of B. L. Muir & Co. being the sole owner thereof.

"(2)    That now and at all times concerned herein, the defendants are and were husband and wife.

"(3)    That on or about the 21st day of November, 1906, the defendants made, executed and delivered to the plaintiff their written agreement agreeing to pay said plaintiff two hundred dollars ($200) for his services in selling for them a certain parcel of real estate; said agreement being in words and figures, to wit:

" 'M. Francis Kane and Ida Kane, his wife, agree to sell and Paul Bush agrees to buy the following described real estate situated in the County of King, State of Washington, to wit:

" 'South 40 feet of lot 1, block 17, J. H. Nagle's addition to the city of Seattle, for the sum of nine thousand six hundred dollars ($9,600) the purchaser having paid the sum of five hundred dollars ($500) the receipt of which is hereby acknowledged, as earnest money and part payment for said land, the same to be held in trust by B. L. Muir & Co. until the sale is closed or canceled and the balance of said purchase price shall be paid as follows, or as soon after said dates respectively as the title to said real estate is shown to be marketable, to wit:

" 'Three thousand dollars ($3,000) on or before the 22nd

day of Nov. 1906, at 1 p. m.; nineteen hundred dollars ($1,900) on or before the 22nd day of Nov. 1907, at 1 p. m.; four thousand dollars ($4,000) according to certain mortgage to be executed due in three years from date.

" 'The purchaser agrees to pay interest at the rate of six per cent payable semi-annually on all deferred payments.

" 'The vendor agrees to furnish an abstract of title made by a reliable abstract company, for said real estate showing a marketable title of record in the vendor free from encumbrances to date of conveyance except the street assessments amount to about two hundred dollars ($200) and if over $200 the surplus to be deducted from the nineteen hundred payment which the purchaser assumes and agrees to pay as a part of the above named purchase price, and the vendor further agrees to transfer said property to the purchaser by a good and sufficient warranty deed to the said vendee or his assigns and pay two hundred dollars ($200) of the purchase price to B. L. Muir & Co. for services rendered.

" 'The purchaser shall have one day's time after the delivery of said abstract for examination of same, and in case the abstract shall show a marketable title in the vendor, this sale shall be completed, and if the said title is not marketable and cannot be made so, then B. L. Muir & Co. shall refund to the said vendee the above named earnest money, and the sale shall be canceled, the deposit of $500 to be paid to Mrs. Ida Kane in the event of the purchaser failing to comply with this agreement.

" 'Witness our hands this 21st day of November, 1906.

" 'Signed and delivered in the presence of B. L. Muir.

" 'M. FRANCIS KANE,  [SEAL.]

" 'IDA KANE,  [SEAL.]

" 'PAUL BUSH.  [SEAL.]'

"(4) That the plaintiff did make the sale referred to in said written contract and which sale was accepted by the defendants, but they have since failed, neglected and refused to pay the aforesaid two hundred dollars ($200) commission allowed, although the same is long past due and still the property of the plaintiff."

The statute governing contracts for commissions for buying or selling real estate provides that any agreement authorizing an employee, an agent or broker, to sell or pur-

chase real estate for compensation or a commission, shall be void unless the agreement, contract, or promise, or some note or memorandum thereof, be in writing. The appellants contend that the writing relied upon by the respondent is insufficient under the statute; that it is not an agreement authorizing the respondent to sell the real property described for compensation or commission, nor does it authorize or employ the respondent to sell real estate at all. Manifestly, if the writing sued upon was intended as an agreement authorizing the respondent to sell real estate of the appellants, it is faulty in the particulars mentioned, and so far deficient as not to warrant a recovery even if a sale had been made thereunder. But we do not understand that this is the question presented by the record. It is clear that this writing was not intended as an agreement authorizing the respondent to sell the real property mentioned. In fact, it was executed after that service had been performed, and is an agreement in writing to pay a fixed sum for a past service, not a service to be performed in the future. The question for determination is its validity as a promise to pay for a past service.

Looking to the instrument itself, there is nothing on its face that in any manner impugns its validity. It is a direct promise to pay a fixed sum of money for services rendered. *Prima facie*, therefore, it is legal and valid; and if it is illegal at all, it is because the actual consideration for the promise, which was alleged and proven, rendered the promise illegal. This consideration was the sale of real property for the appellants by the respondent acting as a broker, without a written agreement authorizing the service, and it is thought that because the statute declares an agreement for such a service void unless in writing, the service furnishes no consideration for the subsequent promise, since the service must either have been founded upon an invalid agreement or was voluntary. There are cases which maintain this doctrine. In *Bagnole v. Madden* (N. J.), 69 Atl. 967, the precise question was presented. There the plaintiff had been orally authorized

by the defendant to sell a parcel of real estate owned by the defendant. A purchaser was found and a contract of sale entered into. The defendant thereupon executed a written agreement and delivered the same to the plaintiff, wherein she promises to pay him $50 for his services. In an action brought upon the writing, the court held that she could not recover because of the invalidity of the original oral contract authorizing the services, it being in violation of the statute declaring such agreement void unless in writing. The case was rested on a decision of the Court of Errors and Appeals, *Stout v. Humphrey*, 69 N. J. L. 436, 55 Atl. 281, which announced the same doctrine, but upon a state of facts not quite the same; the subsequent promise to pay being oral instead of in writing. In the course of its opinion in the latter case, the court said:

"It is clear that if a contract between two parties be *void*, and not merely *voidable*, no subsequent express promise will operate to charge the party promising, even though he has derived the benefit of the contract. Yet, according to the commonly received notion respecting moral obligations, and the force attributed to a subsequent express promise, such a person ought to pay. An express promise, therefore, as it should seem, can only revive a precedent good consideration which might have been enforced at law through the medium of an implied promise had it not been suspended by some positive rule of law, but can give no original right of action if the obligation on which it is founded never could have been enforced at law, though not barred by any legal maxim or statute provision."

The court, it will be observed, makes a distinction between contracts formerly good but on which the right of recovery has been barred by the statute, and those contracts which are barred in the first instance because of some legal defect in their execution, holding that the former will furnish a consideration for a subsequent promise to perform, while the latter will not.

It has seemed to us that this distinction is not sound. The moral obligation to pay for services rendered as a broker in

selling real estate, under an oral contract where the statute requires such contract to be in writing, is just as binding as is the moral obligation to pay a debt that has become barred by the statute of limitations, and there is no reason for holding that the latter will support a new promise to pay while the former will not. There is no moral delinquency that attaches to an oral contract to sell real property as a broker. This service cannot be recovered for because the statute says the promise must be in writing; not because it is illegal in itself. It was not intended by the statute to impute moral turpitude to such contracts. The statute was intended to prevent frauds and perjuries, and to accomplish that purpose, it is required that the evidence of the contract be in writing; but it is not conducive to either fraud or perjury to say that the services rendered under the void contract, or voluntarily, will support a subsequent written promise to pay for such service. Nor is it a valid objection to say there was no antecedent legal consideration. The validity of a promise to pay a debt barred by the statute of limitations is not founded on its antecedent legal obligation. There is no legal obligation to pay such a debt; if there were, there would be no need for the new promise. The obligation is moral solely, and since there can be no difference in character between one moral obligation and another, there can be no reason for holding that one moral obligation will support a promise while another will not.

Our attention has been called to no case, other than the New Jersey case above cited, where the facts of the case at bar are presented. A case in point on the principle involved, however, is *Ferguson v. Harris*, 39 S. C. 323, 39 Am. St. 731. Certain persons, without authority from the defendant, had ordered lumber and used it in the erection of a building on the defendant's separate property, she being a married woman. Subsequently she gave her promissory note therefor, and when an action was brought upon the note she sought to defend on the ground of want of consideration. It

was conceded that there was never any legal obligation on the part of the defendant to pay for the lumber, but that her obligation was wholly moral. It was thereupon urged that such an obligation was insufficient to support the promise. Speaking upon this question the court said:

"All of the authorities admit that where an action to recover a debt is barred by the statute of limitations, or by a discharge in bankruptcy, a subsequent promise to pay the same can be supported by the moral obligation to pay the same, although the legal obligation is gone forever; and I am unable to perceive any just distinction between such a case and one in which there never was a legal, but only a moral, obligation to pay. In the one case, the legal obligation is gone as effectually as if it had never existed, and I am at a loss to perceive any sound distinction in principle between the two cases. In both cases, at the time the promise sought to be enforced is made, there is nothing whatever to support it except the moral obligation, and why the fact that, because in the one case there was once a legal obligation, which, having utterly disappeared, is as if it had never existed, should affect the question, I am at a loss to conceive. If, in the one case, the moral obligation, which alone remains, is sufficient to afford a valid consideration for the promise, I cannot see why the same obligation should not have the same effect in the other. The remark made by Lord Denman, in *Eastwood v. Kenyon*, 11 Ad. & E. 438, that the doctrine for which I am contending 'would annihilate the necessity for any consideration at all, inasmuch as the mere fact of giving a promise creates a moral obligation to perform it,' is more specious than sound, for it entirely ignores the distinction between a promise to pay money which the promisor is under a moral obligation to pay, and a promise to pay money which the promisor is under no obligation, either legal or moral, to pay. It seems to me that the cases relied upon to establish the modern doctrine, so far as my examination of them has gone, ignore the distinction pointed out in the note to *Comstock v. Smith*, 7 Johns. 89, above cited, between an *express* and an *implied* promise resting merely on a moral obligation, for while such obligation does not seem to be sufficient to support an *implied* promise, yet it is sufficient to support an *express* promise."

To the same effect is *Anderson v. Best*, 176 Pa. St. 498, 35 Atl. 194, wherein it was said:

"The distinction sought to be made between considerations. formerly good but now barred by statute, and those barred by statute in the first instance, is not substantial, and is not sustained by the cases."

See, also, *Bailey v. Philadelphia*, 167 Pa. St. 569, 31 Atl. 925, 46 Am. St. 691; *Stout v. Ennis*, 28 Kan. 706.

Believing as we do that the better rule is with the cases. holding the moral obligation alone sufficient to sustain the promise, it follows that the judgment appealed from should be affirmed. It is so ordered.

RUDKIN, C. J., GOSE, CHADWICK, and MORRIS, JJ., concur.