738 P.2d 1121

**REALTY ASSOCIATES OF SEDONA,**
Plaintiff-Appellant,

v.

**VALLEY NATIONAL BANK OF ARIZONA;** Transamerica Title Insurance Company; and Katherine L. Peterson, Defendants-Appellees.

**No. 1 CA–CIV 8456.**

Court of Appeals of Arizona,
Division 1, Department A.

Nov. 13, 1986.

Reconsideration Denied May 18, 1987.

Favour, Weaver, Moore & Schuyler, P.A. by John M. Favour, Prescott, for plaintiff-appellant.

Aspey, Watkins & Diesel by Harold L. Watkins, Flagstaff, for defendant-appellee Valley Nat. Bank.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Larry L. Smith, and Richard Shannon, Phoenix, for defendant-appellee Peterson.

GREER, Judge.

On this appeal from summary judgment we must decide whether there was a written agreement entitling a real estate broker to receive a commission and whether the broker's claim was barred by Nevada and Arizona statutes of limitation.

Willis E. Blackburn executed an exclusive listing agreement with Realty Associates of Sedona (Associates) on November 17, 1980 for the sale of certain residential property located in Yavapai County. By its terms the listing agreement expired on March 10, 1981.

On April 10, 1981 Katherine L. Peterson submitted an offer to purchase the property through Associates. Blackburn accepted the offer on May 10, 1981 and on that same date signed a renewal of his listing agreement with Associates. The purchase contract provided that escrow was to close on or before June 30, 1981.

Escrow instructions dated April 21, 1981 were drawn up in accordance with the purchase contract and signed by Blackburn and Peterson. Transamerica Title Insurance Company (Transamerica) was made the escrow agent. Both the purchase contract and the escrow instructions indicated that the sales price was $87,000 paid by a $3,000 deposit into escrow with the balance payable at the close of escrow.

Blackburn died on May 23, 1981, in Las Vegas, Nevada where he had been domiciled for many years. In accordance with his will, Nevada National Bank was appointed personal representative of Blackburn's estate. Apparently no action was taken for several months with respect to Blackburn's contract with Peterson.

On April 24, 1982, Transamerica received a notice from Peterson dated December 16, 1981, demanding the seller's compliance with all terms of the escrow instructions within thirteen days from the day the escrow agent received the notice.

After the time for compliance required by Peterson's notice had expired, letters of special administration were issued to Valley National Bank (Valley) by the Yavapai County Superior Court on May 11, 1982 making Valley an ancillary personal representative of Blackburn's estate. On May 12, 1982 Transamerica received a warranty deed executed by Valley tendered along with other documents as full performance by the seller. On the same day, Valley also delivered to Transamerica a notice addressed to Peterson demanding full compliance by Peterson with all the terms of the escrow instructions within thirteen days from May 12, 1982. Peterson received the notice on May 14, 1982, but she tendered no payment.

Associates filed a complaint on November 16, 1982 against Valley as a personal representative of Blackburn's estate, Transamerica and Peterson. Associates sought a money judgment against Valley for its broker's commission and asserted a claim to the escrow funds of $3,000 held by Transamerica. Although the complaint sought no affirmative relief against Peterson, Associates alleged on information and belief that Peterson asserted a claim in the escrow funds.

Peterson filed an answer admitting the purchase contract with Blackburn and alleging that she was a ready, willing and able purchaser but that Valley had breached the decedent's agreement of sale. She sought the return of her $3,000 earnest money deposit and damages against Valley for breach of contract.

Valley admitted Blackburn's agreement, but denied that Peterson was ever ready, willing and able to purchase the property and alleged that the estate had at all times been ready, willing and able to complete the sale. Valley requested damages against Peterson for her breach of the purchase agreement.

Transamerica requested permission to interplead Peterson's $3,000 earnest money deposit.

Valley filed a motion for summary judgment requesting that Associates' complaint be dismissed or, alternatively, Associates' recovery be limited to one-half of Peterson's earnest money deposit.

The trial court entered a final judgment granting Valley's motion for summary judgment and ordering Associates to take nothing by its complaint; awarding defendants their costs and attorney's fees; ordering Transamerica to return the $3,000 earnest money deposit to Peterson; and dismissing the counterclaims of Valley and Peterson. The judgment also recited that Valley and Peterson had stipulated to dismiss their cross-claims against each other.

Following denial of its motion for new trial, Associates filed a timely notice of appeal to this court from the judgment and order denying its motion.

The trial court's reasons for denying Associates' claim for a commission are explained in the judgment as follows:

The renewal agreement fails as to the May 10, 1981 transaction, because it was supported only by pre-existing consideration. It was not moot as to any subsequent sale under its terms in the event the May 10 sale failed. The plaintiff's right to a commission was clearly established by the real estate purchase contract executed May 10, 1981. That right, however, was conditioned unlike the listing agreement which only required the bringing together of a willing buyer and seller. Therefore, the plaintiff was left with no recourse under the undisputed facts of this case. The issue of Peterson's ability to perform, a fact question if plaintiff's right was established by the renewal agreement, need not be addressed....

## THE RENEWAL AGREEMENT

The trial court concluded that there was no valid listing agreement in effect when the sales agreement between Blackburn and Peterson was executed because the

renewal of the original listing was signed by Blackburn *after* Associates had obtained Peterson's written offer to purchase Blackburn's property. It is unclear when Associates transmitted this offer to Blackburn or whether the renewal agreement was signed before or after Blackburn accepted the offer.

■ Before addressing the issues, we note that the interpretation of an instrument is a question of law to be determined by this court independent of the findings of the trial court. *Cecil Lawter Real Estate School, Inc. v. Town & Country Shopping Center Co., Ltd.,* 143 Ariz. 527, 533, 694 P.2d 815, 821 (App.1984).

Associates contends that the trial court erred in finding the listing agreement inapplicable on grounds that there was no consideration for the promise to pay a commission.

There are two separate issues relative to the renewal agreement: (1) whether it was void for failure of consideration and (2) whether it was intended to apply to the Blackburn/Peterson transaction.

While there are no Arizona decisions directly addressing the first issue, other jurisdictions have considered whether a written agreement for a real estate commission which occurs *after* services have been rendered by the broker is invalid for want of consideration. There are divergent views on this issue. At least one jurisdiction has held that a promise made after a broker has rendered services is unenforceable for lack of consideration. *See Stout v. Humphrey,* 69 N.J.L. 436, 55 A. 281 (1903). Others find such contracts enforceable. *See Isaguirre v. Echevarria,* 96 Idaho 641, 534 P.2d 471 (1975); *Muir v. Kane,* 55 Wash. 131, 104 P. 153 (1909). *Cf. Stuart v. Coldwell Banker Co.,* 552 S.W.2d 904 (Tex. Civ.App.1977). *See generally* Annot. 8 A.L.R.2d 787 (1949); Annot. 79 A.L.R. 1346 (1932); Annot. 17 A.L.R. 1299 (1922); 12 Am.Jur.2d, Brokers § 51 (1964).

The *Restatement (Second) of Contracts* § 86 provides:

(1) A promise made in recognition of a benefit previously received by the prom-

isor from the promisee is binding to the extent necessary to prevent injustice.

(2) A promise is not binding under Subsection (1)

(a) If the promisee conferred the benefit as a gift or for other reasons the promisor has not been unjustly enriched; or

(b) To the extent that its value is disproportionate to the benefit.

Comment g under § 86 specifically addresses the right to a real estate commission for past services with the following illustration at page 227:

11. By statute an agreement authorizing a real estate broker to sell land for compensation is void unless the agreement or a memorandum thereof is in writing. A, a real estate broker, procures a purchaser for B's land without any written agreement. In the written sale agreement, signed by B, B promises to pay A $200, the usual commission, 'for services rendered.' The promise is binding.

■ In *Murphy v. Smith,* 26 Ariz. 394, 226 P. 206 (1924), the Arizona Supreme Court referred to *Muir v. Kane* with apparent approval, citing it for the proposition that a written acknowledgment of a prior moral obligation for services previously rendered by a broker was enforceable. The court distinguished the case before it from *Muir* because there was no written acknowledgment to satisfy the statute of frauds. *See* A.R.S. § 44–101. Thus, prior Arizona caselaw is consistent with *Restatement (Second) of Contracts* § 86 and those jurisdictions permitting recovery by a broker upon acknowledgment of receipt of prior services.

■ Valley attempts to distinguish *Muir* on the basis that since no final sale occurred, it applies only to the completion of a sale. It contends that no benefit resulted from the services provided by Associates, thereby causing the listing agreement renewal to fail for lack of present consideration. We disagree. Valuable consideration implies a benefit to promisor or detriment to promisee, and may consist of any benefit or detriment, not necessarily

monetary. *Larson Hegstrom & Associates v. Jeffries,* 145 Ariz. 329, 332, 701 P.2d 587, 590 (App.1985). Here, Associates both gave a benefit and incurred a detriment by providing Blackburn with a contract of sale for his property. The reasons for the failure of that sale are in dispute. For purposes of summary judgment, we must assume that the contract was enforceable.

The trial court's decision is consistent with Illustration 11 to § 86 to the extent that it finds that the sales agreement, *i.e.,* the purchase contract signed by Blackburn and Peterson, created a binding promise.

However, the trial court apparently concluded that the listing renewal was not a "promise made in recognition of a benefit previously received." Rather, it concluded that the listing renewal was intended to be prospective if the May 10, 1981 sale failed. Thus, we reach the second issue in construing the listing renewal.

Associates argues that the most reasonable inference is that Blackburn signed the listing renewal before he accepted the Peterson contract and signed it with the intention of renewing the listing retroactive to the expiration of the prior listing. Valley argues that the listing agreement would apply only if the Blackburn/Peterson sale failed.

The listing renewal is a short document identifying the original listing and providing a new expiration date of June 10, 1981. It contains a signature on behalf of Associates dated March 9, 1981 and Blackburn's signature dated May 10, 1981.

■ On its face the listing renewal is ambiguous with respect to its applicability to transactions occurring after the original listing and before May 10, 1981. On this basis alone we would find it necessary to reverse summary judgment against Associates. However, we are of the opinion that the listing agreement must be read in conjunction with the purchase contract signed that same date. Under Arizona law, substantially contemporaneous instruments will be read together to determine the nature of the transaction between the parties. *Pearll v. Williams,* 146 Ariz. 203, 206, 704 P.2d 1348, 1351 (App.1985). The listing agreement was effective on May 10, 1981, the same date on which Blackburn accepted Peterson's offer. It strains credibility to assume that Associates presented the offer for sale and simultaneously provided a listing renewal that would be effective only if the offer it was presenting failed. Further, the purchase contract contains the same basic terms with respect to the amount of the commission and acknowledges that Associates was the procuring broker. We find that the only reasonable interpretation of the listing renewal is that it was intended to apply to the sale executed that same day.[1]

### REAL ESTATE PURCHASE CONTRACT AND ESCROW INSTRUCTIONS

The well-established rule regarding entitlement to a real estate commission is set forth in *Lockett v. Drake,* 43 Ariz. 357, 31 P.2d 499 (1934):

> In the absence of a specific contract to the contrary, when a real estate broker has brought together the parties to a sale or exchange of real estate, and they have agreed fully on the terms and entered into a binding contract for such sale or exchange, his duties are at an end and his commission is fully earned, and it is immaterial that the parties to the contract rescind mutually or that one or the other thereof defaults and the sale or exchange is not fully effected.

*Id.* at 360, 31 P.2d at 500. *See also, Nationwide Resources Corp. v. Ngai,* 129 Ariz. 226, 630 P.2d 49 (App.1981); *Campbell v. Mahany,* 127 Ariz. 332, 620 P.2d 711 (App.1980).

■ A contractual provision can, of course, condition the right to a commission

---

1. Our finding that the listing renewal was valid distinguishes this case from *Olson v. Neale,* 116 Ariz. 522, 570 P.2d 209 (App.1977). In that case we held that an existing written listing agreement was necessary in order for a broker to recover a commission. There, a listing agreement had expired nearly two years prior to the actual consummation of the sale, and no renewal agreement was executed.

upon the happening of a certain event. The trial court construed the purchase contract in this case to make "close of escrow" a condition precedent to Associates' right to receive a commission. The purchase contract provides:

I (we) agree to sell the Premises on the terms and conditions herein stated and agree to pay the broker as commission the sum of five thousand two hundred twenty dollars ($5,220.00), *payable in cash at close of escrow or one-half the deposit in case same is forfeited by the Buyer,* provided same shall not exceed the full amount of the commission, all in accordance with the signed listing agreement, if any, heretofore entered into between Broker and Seller.... (Emphasis added.)

As we have found the listing renewal applicable to this transaction, we must construe the above provision together with the listing agreement. The listing agreement provides:

I or we agree to pay you 6% (six) percent of the above price, *or any other price that I or we agree to accept if a purchaser is procured in accordance with the above terms and conditions* or the event of sale, exchange, rental or lease is made by me or us, or through any other agent during the term of this exclusive right to sell. (Emphasis added.)

Valley contends that the listing agreement itself makes payment of a commission contingent upon the procurement of a purchaser "in accordance with the above terms" meaning a sale price of $89,500. It contends that the actual sale price was $87,000, and concludes that Associates did not procure a purchaser in accordance with the terms of the listing agreement.

 We find Valley's construction of the listing agreement to be incorrect. The agreement provides that the buyer will pay six percent of the "above price" or "any other price that I or we agree to accept." If the phrase "in accordance with the above terms and conditions" was intended to mean payment only if the selling price was "$89,500," the provision that the seller

would pay six percent of "any other price that I or we agree to accept" would be meaningless. It is a cardinal rule of construction that each section of agreement must be read in relation to each other to bring harmony, if possible between all parts of the writing. *Autonumerics, Inc. v. Bayer Industries, Inc.,* 144 Ariz. 181, 188, 696 P.2d 1330, 1337 (App.1984); *Brisco v. Meritplan Ins. Co.,* 132 Ariz. 72, 75–76, 643 P.2d 1042, 1045–46 (App.1982). A contract must be construed so that every part is given effect. *Phillips v. Flowing Wells Unified School Dist. No. 8 of Pima County,* 137 Ariz. 192, 193, 669 P.2d 969, 970 (App.1983). Applying these rules of construction, we conclude that the listing agreement permits the broker to recover six percent of the $89,500 price contained in the agreement or "any other price" that the seller was willing to accept.

The trial court did not construe the purchase contract in light of the listing agreement because it concluded that the listing renewal was void for want of consideration. Its conclusion that "close of escrow" was a condition precedent, therefore, did not analyze the provision in light of the purchase agreement's incorporation by reference to "the signed listing agreement, if any."

 A contractual provision is not a condition precedent unless it appears from the contract itself that the parties intended the provision to so operate. *Angle v. Marco Builders, Inc.,* 128 Ariz. 396, 626 P.2d 126 (1981). In *Watson Const. Co. v. Reppel Steel & Supply,* 123 Ariz. 138, 140, 598 P.2d 116, 118 (App.1979), this court stated:

[C]onditions precedent are not favored and the courts are not inclined to construe a contractual provision as a condition precedent unless such construction is plainly and unambiguously required by the language of the contract.

 The provision "payable in cash at close of escrow" does not plainly and unambiguously demonstrate that the parties intended to create this as a condition to the seller's obligation to pay the broker's commission. This is especially evident in light of the listing agreement provision that a

**520**

commission is to be paid when a "purchaser is procured...." The cases cited by Valley in support of its argument address contracts with provisions substantially different from the documents involved in this litigation.

■■■ The purchase contract quoted above expressly provides that if the buyer defaults, half of the deposit in escrow goes to the broker. However, it does not address the effect of the seller's default. Case law provides that a broker's right to compensation is not defeated by the seller's refusal or inability to honor the sales agreement. *Bass Investment Co. v. Banner Realty, Inc.*, 103 Ariz. 75, 80, 436 P.2d 894, 899 (1968); *Nationwide Resources Corp. v. Ngai, supra.* There is nothing in the purchase agreement releasing a non-performing seller.

If Valley failed to perform, it is therefore obligated to pay the full commission to Associates. If Peterson failed to perform, i.e., was not a "ready, willing and able buyer," as argued by Valley, the purchase contract and escrow instructions require one-half of Peterson's $3,000 earnest money deposit to be paid to Associates. In addition to the above quoted provision of the purchase contract, the escrow instructions provide:

8. If, under these instructions, a commission is to be paid to a Real Estate Broker, regardless of the provisions of paragraphs seven (7a) above, then:

a. The party obligated to pay the commission shall not acquiesce in any mutual cancellation without approval of the Real Estate Broker.

b. Upon the cancellation of the escrow should any funds become payable to a party obligated hereunder to pay said commission, then Escrow Agent shall pay to the Real Estate Broker therefrom, a sum equal to one-half of the earnest money, but not more than the full amount of the commission.

■■■ It is undisputed that Associates did not approve a cancellation. It is also undisputed that both Valley and Peterson gave notice of cancellation with the demand for performance by the other. In the pleadings, Peterson contended that she was a ready, willing and able buyer and sought recovery against Valley for breach of contract. However, in support of Valley's motion for summary judgment Peterson submitted an affidavit contradicting her prior pleadings and alleging that she was unable to perform. She contended that she had signed the purchase contract with the understanding from Associates that it was not binding unless she sold her residence in Idaho. This statement was controverted by affidavits from personnel of Associates. Thus there was clear disagreement over whether Peterson was a "ready, willing and able buyer" and correspondingly whether Peterson or Valley breached the sales contract. The fact that Valley and Peterson chose to dismiss their cross-claims against each other cannot negate the existence of this dispute.

■■■ Even if Valley and Peterson mutually rescinded the sales agreement without the approval of Associates, it would not relieve Valley of its obligation to pay the commission. *Campbell v. Mahany*, 127 Ariz. 332, 620 P.2d 711 (App.1980); *Eason v. Heighton*, 49 Ariz. 237, 65 P.2d 1373 (1937).

Valley raised an additional issue in a notice of errata filed with this court on April 3, 1986, four days before we heard the parties' oral arguments. It claims that Peterson's thirteen day closing letter sent to Transamerica Title was actually sent on April 29, 1982, rather than April 24, 1982, as is listed in the documents throughout the record.

The actual determination of the date of receipt of the letter may well be important in determining whether Valley or Peterson was in breach of contract. However, such a factual issue must be resolved by the trier of fact.

We find that there are factual issues that are relative to Associates' entitlement to recover its full commission from Valley or half of the escrow deposit made by Peterson. Accordingly, summary judgment in favor of Valley must be reversed. Likewise, that portion of the judgment granting

Peterson a refund of her deposit must be reversed.

## STATUTES OF LIMITATION

■ Valley asserts additional grounds not relied upon by the trial court as a basis for upholding the judgment. This court will sustain even a summary judgment if it is correct even though rendered for the wrong reason. *People ex rel. Babbitt v. Green Acres Trust,* 127 Ariz. 160, 167, 618 P.2d 1086, 1093 (App.1980). Thus, we will consider Valley's cross issue on appeal.

Valley argues that Associates' claim was barred by the Nevada and Arizona statutes of limitations applicable to claims against decedent's estates.

The applicable Arizona statute is A.R.S. § 14–3803(A) which provides:

A. All claims against a decedent's estate which arose before the death of the decedent, including claims of the state and any subdivision thereof, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort or other legal basis, if not barred earlier by other statute of limitations, are barred against the estate, the personal representative and the heirs and devisees of the decedent, unless presented as follows:

1. Within four months after the date of the first publication of notice to creditors if notice is given in compliance with § 14–3801, *except claims barred by the non-claim statute at the decedent's domicile before the first publication for claims in this state are also barred in this state.*

2. Within three years after the decedent's death, if notice to creditors has not been published.

(Emphasis added.)

Valley contends that Associates' claim is barred by Nevada's non-claim statute, N.R.S. § 147.040, and is therefore barred in Arizona pursuant to A.R.S. 14–3803(A)(1). N.R.S. § 147.040 provides:

1. All persons having claims against the deceased must within ninety days after the first publication of the notice specified in N.R.S. § 147.010 file the same, with the necessary vouchers, with the clerk of the court, who shall file and register each claim;

2. If a claim is not filed with the clerk within ninety days after the first publication of the notice, the claim shall be forever barred; *but when it is made to appear, by the affidavit of the claimant or by other proof to the satisfaction of the court or judge, that the claimant had no notice as provided in this chapter, the claim may be filed at any time before the filing of the final account.*

(Emphasis added.)

Valley provided evidence that notice to Blackburn's creditors was first published August 25, 1981, in the *Nevada Legal News.* It contends that the last date to file a claim against the estate in Nevada was November 23, 1981. Associates never filed a claim in Nevada; thus, Valley argues that its claim was barred by N.R.S. § 147.-040 and therefore barred pursuant to A.R.S. § 14–3803(A)(1).

■ However, in its response to Valley's motion for summary judgment, Associates filed the affidavit of Richard Olson which established that: Associates is an Arizona Corporation authorized to do business in the State of Arizona, it has no officers, employees or agents in the State of Nevada; it transacts no business in Nevada; and it received no notice to creditors designating a ninety-day period in which to submit claims against the Blackburn estate in the Nevada proceeding. This affidavit was uncontroverted. A corporation foreign to the State of Nevada and without actual notice of publication of notice to creditors is not barred from presenting a claim by the ninety-day period of presentment. *Pacific States Savings, Loan & Building Co. v. Fox,* 25 Nev. 229, 59 P. 4 (1889). *See also, Bell Brand Ranches, Inc. v. First Nat'l Bank,* 91 Nev. 88, 92, 531 P.2d 471, 473 (1975). Thus, at least for purposes of summary judgment, it was established that Associates' claim is not barred pursuant to N.R.S. § 147.040(2). While N.R.S. § 147.040(2) provides that such a claim must be filed before the filing

**522**

of the final account, there is no evidence in the record that the final account was filed in the Nevada probate proceedings.

Additionally, there is no direct evidence in the record that notice to creditors was published in Arizona. Associates' response to Valley's motion for summary judgment does acknowledge that notice was published in the Yavapai County probate proceedings of Blackburn's estate in August of 1983. This action was filed prior to that date. The reference to the notice in the Yavapai County probate proceedings is not evidence but simply a statement in Associates' responsive motion. However, there is no other evidence in the record that Associates had actual notice or that there was publication in Arizona which would bar this action pursuant to A.R.S. § 14–3803(A).

### ATTORNEY'S FEES

Associates has requested that it be awarded it reasonable attorney's fees pursuant to A.R.S. § 12–341.01 and Rule 21(c), Arizona Rules of Civil Appellate Procedure. We award Associates its attorney's fees on appeal in an amount to be determined after a statement of costs is filed in compliance with Rule 21(c), Arizona Rules of Civil Appellate Procedure and this court's decision in *Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183, 673 P.2d 927 (App. 1983).

### CONCLUSION

The judgment is reversed and this matter is remanded to the trial court for proceedings in accordance with this decision.

MEYERSON and KLEINSCHMIDT, JJ., concur.