779 P.2d 1280

Larry W. WILKIE, Plaintiff–Appellant,

v.

STATE of Arizona; Department of Corrections, a division thereof; James R. Upchurch; John Doe Frazier; Joseph Scalzo; Rita Bareface; Kelly Spencer, Warden; Sharon M. Burr; Brian Mathias; CSO John Doe Rillamas; Sgt. John Doe Hicks; John Doe I through V; Lt. Thomas Brown; Peg Ritchie, Defendants–Appellees.

No. 1 CA–CV 88–234.

Court of Appeals of Arizona, Division 1, Department A.

Aug. 22, 1989.

Reconsideration Denied Oct. 6, 1989.

Robert K. Corbin, Atty. Gen. by Judith E. Abramsohn, Asst. Atty. Gen., Phoenix, for defendants-appellees.

Michael E. St. George, Tempe, for plaintiff-appellant.

## OPINION

JACOBSON, Presiding Judge.

Plaintiff/Appellant Larry W. Wilkie, a former prisoner at the Arizona State Prison, brought suit based upon various causes of action against the state arising out of his treatment or lack of treatment of a medical condition while in prison. The basic issues on appeal are whether the trial court properly dismissed his § 1983 action (based upon 42 U.S.C. § 1983) and his claims of negligence and breach of statutory duty, and if so, whether his remaining count for infliction of cruel and unusual punishment under the eighth amendment of the United States Constitution will support a claim for monetary damages.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was an inmate with the Arizona Department of Corrections from January 1985 until the summer of 1987. Prior to his incarceration, in June 1982, he underwent cancer surgery, specifically involving a resection of a Duke's B carcinoma of the right colon. His physician described this as representing "the removal of a portion of the intestine which contained a tumor that infiltrated through the full thickness of the intestinal wall." After his incarceration, his physician wrote to the Director of Health Services at the Department of Corrections, advising of plaintiff's medical condition and prescribing an appropriate diet and follow-up care:

> [Plaintiff's former problem with incontinence as a result of a prior surgery] was made significantly worse during his right colectomy because of the necessity of removing his ileocecal valve.
>
> According to [plaintiff], he is experiencing significant problems in controlling his gastrointestinal function. I am sure he could be made significantly more comfortable during his incarceration if an effort can be made to produce a more solid bowel action. This can be accomplished by one of two methods. From a dietary standpoint, a high fiber diet with supplements of unprocessed Miller's bran or a Psyllium seed preparation will tend to increase the consistency of the stool. Alternatively, an easier means of accomplishing the same mission would be to prescribe Lomotil 5 mg. [4 times a day] or appropriate dosages of Immodium.
>
> [Plaintiff] is also entering a critical period in the natural history of his can-

cer. Since his original neoplasm extended through the full thickness of the intestinal wall, he is at considerable risk for developing recurrent or metastatic disease. Early diagnosis is the most effective means in treating these complications of this disease. [He] should, on a six-monthly basis, undergo a medical examination which should include not only a physical evaluation but an evaluation of his blood through a complete blood count, liver function study, and carcinoembryonic antigen. On a yearly basis he should undergo a chest xray and colonoscopic surveillance of the remaining portion of his intestine....

The Department of Corrections acknowledged receiving this letter and a copy of an earlier similar letter from the same physician.

In March 1985, plaintiff started filing inmate grievances, complaining that he was not receiving his prescribed high fiber diet, that he had been denied medication to combat his intestinal discomfort, and complaining of "numerous personal accidents" because of his bowel problems. He also stated, "I continue to go through much stress over this situation.... Without hi-fiber diet I go through much pain and have stomach contractions." He filed grievances continuously throughout April and May of 1985.

In October 1986, while still an inmate, plaintiff filed a civil rights suit, alleging causes of actions based upon violations of 42 U.S.C. § 1983,[1] the eighth amendment,[2] negligence, and breach of statutory duty to care for prisoners. He named as defendants, the state, the Department of Corrections, eleven named individual state officials, and five fictitious "John Doe" defen-

---

1. 42 U.S.C. § 1983 reads, in pertinent part:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

2. The eighth amendment to the United States Constitution provides:
   Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.
   The eighth amendment is made applicable to the state through the fourteenth amendment. *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962).

dants, alleged to be employees and agents of the state. None of the individual defendants has been personally served with a summons and complaint.

The state moved to dismiss the § 1983 cause of action on the grounds that a state is not a "person" that can be sued under § 1983. *See Garcia v. State,* 159 Ariz. 487, 768 P.2d 649 (App.1988). The state also moved for dismissal of the complaint in its entirety as to the Department of Corrections, on the ground that all alleged causes of action would run only against the state, pursuant to A.R.S. § 31–201.01(E).[3] The trial court granted this motion on January 2, 1987.

In December 1987, the state moved for summary judgment on the remaining three counts, arguing that plaintiff had failed to allege a physical injury or worsening of his physical condition caused by the alleged denial of medical monitoring and prescribed diet. The court granted summary judgment in favor of the state on the remaining eighth amendment, negligence, and statutory duty counts. On February 19, 1988, the court issued its formal judgment, ruling:

> IT IS ORDERED AND ADJUDGED that the defendant's Motion for Summary Judgment is granted;
> IT IS FURTHER ORDERED AND ADJUDGED that judgment is granted in favor of the defendant and against the plaintiff and that the plaintiff take nothing on his complaint.

Plaintiff timely appealed, raising three issues:

1. Does an inmate need to allege or prove actual worsening of his condition to state a claim for relief under the eighth amendment?

2. Did the trial court erroneously enter final judgment because no dismissal was entered on the § 1983 claim in favor of the named individual defendants?

3. Did the trial court improperly grant judgment for the state on the negligence and statutory duty claims?

## DISCUSSION

### A. *Section 1983 Claim*

The trial court dismissed the plaintiff's first claim for relief under § 1983 "as to Defendant State of Arizona," based on defendant's argument that the state is not a "person" within the meaning of § 1983. *See Garcia v. State,* 159 Ariz. 487, 768 P.2d 649 (App.1988); *St. Mary's Hosp. & Health Center v. State,* 150 Ariz. 8, 721 P.2d 666 (App.1986). The court also dismissed the complaint in its entirety as to the Department of Corrections, based on defendant's argument that that agency is not an entity subject to suit under A.R.S. § 31–201.01(E). Those dismissals are not at issue in this appeal.

The court did not, however, specifically adjudicate the § 1983 claims against the individual named and fictitious defendants, although the final judgment in this matter dismissed the plaintiff's entire complaint. Plaintiff argues on appeal, though he did not raise this issue in the trial court, that he still has a cause of action against the individual officers and agents on his § 1983 claim, and thus the formal judgment extinguishing all his claims is incorrect.

Whatever the correctness of this contention, we do not reach it, for the plaintiff failed to object in the trial court to the dismissal of his claims against the unserved defendants. Moreover, he has failed to serve a notice of appeal on these defendants or make them parties to this appeal.

In this regard, we note that at the time of the dismissal the one-year period established by Rule 6(f), Arizona Rules of Civil Procedure, for service of process in order to avoid abatement of the action as to these individual defendants had expired. We further note that the applicable statute of limitations has apparently run on all the

---

3. A.R.S. § 31–201.01(E) provides:
   Any and all causes of action which may arise out of tort caused by the director, prison officers or employees of the department (of corrections), within the scope of their legal duty, shall run only against the state.

claims against the individual defendants. However, the only parties who could raise these personal defenses are the individual defendants who are not before this court on appeal. *See generally Snow v. Steele,* 121 Ariz. 82, 588 P.2d 824 (1978). Under these circumstances, we decline to consider this issue.

### B. *Negligence and Statutory Breach Counts*

In its motion for summary judgment, the state argued that it was entitled to judgment as a matter of law on counts three and four, negligence and breach of statutory duty, on two grounds. First, the state argued that the only injuries alleged in the complaint—an increased risk of cancer and plaintiff's fears and anxieties about his condition—were not legally compensable injuries under existing tort law. Second, the state argued that plaintiff had failed to establish causation between the care and diet he received in prison and increased risk of cancer recurrence. The state conceded that "[t]he prescribed care and diet for the plaintiff was brought to the attention of the defendants by the evaluation and communications of outside experts."

In his response, plaintiff conceded that "his physical condition did not deteriorate for the lack of the prescribed testing and monitoring," but argued that the mental anguish he experienced from the state's "intentional refusal" to provide the prescribed care was actionable. Plaintiff contended that his complaint also alleged "deliberate imposition of practices designed to retard recovery (lack of proper diet, etc.)" that "alleges far more than just an increase in the risk of cancer." Plaintiff conceded that "the increased risk of cancer is not to be an element of his damage...." Plaintiff included an affidavit alleging he was denied his prescribed diet, in whole or in part, and included copies of documents detailing his difficulties in obtaining his prescribed care, including numerous inmate grievances filed with prison officials.

■ We agree with the state that Arizona tort law provides that an increased risk of cancer and its attendant mental anguish are not compensable injuries absent some accompanying physical deterioration. *DeStories v. City of Phoenix,* 154 Ariz. 604, 744 P.2d 705 (App.1987); *Burns v. Jaquays Mining Corp.,* 156 Ariz. 375, 752 P.2d 28 (App.1987), *review granted in part and denied in part,* April 26, 1988). The trial court thus correctly granted summary judgment on the only claims argued by plaintiff—that the lack of medical monitoring increased his risk of cancer recurrence and caused him mental anguish.[4]

### C. *Eighth Amendment Claim*

The plaintiff argues that even if his claims of negligence and breach of statutory duty require a showing of bodily injury, his eighth amendment claim is not so limited. In theory, we agree.

■ To state a claim for violation of the eighth amendment, a plaintiff need not show bodily injury to collect damages. A constitutional claim does not contain the same prerequisites as tort liability. *Cary v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). The Supreme Court has held punishments violative of the eighth amendment when they involve "the unnecessary and wanton infliction of pain." *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976). Even in "less serious cases," the Court has found that denial of medical care that causes a prisoner any medical suffering "is inconsistent with contemporary standards of decency as manifested in modern legislation [citation including A.R.S. § 31–201.01] codifying the common law view that '[i]t is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself.'" *Estelle v. Gamble,* 429 U.S. 97, 103–04, 97 S.Ct. 285, 291, 50 L.Ed.2d 251, 280 (1976). Thus, the standard to determine an eighth amendment violation for deprivation of prescribed medical care is

---

**4.** Because we uphold summary judgment on the basis that plaintiff did not allege a compensable tort injury, we need not address whether a private right of action to sue for damages can be inferred from the statutory duty of the state to care for prisoners. *See* A.R.S. § 31–201.01(D).

whether prison officials have shown a "deliberate indifference to an inmate's serious medical needs." *Id.* Interference with a prescribed treatment may state a cause of action for such a constitutional violation. *Gunter v. State,* 153 Ariz. 386, 387, 736 P.2d 1198, 1199 (App.1987).

A review of the case law indicates that a constitutional claim may be stated even if a prisoner is subject only to a health hazard, a threat of physical harm, or has experienced discomfort associated with any physical pain or mental anguish, even in the absence of any serious bodily injury to the plaintiff. *See generally* Annotation, *Relief Under Federal Civil Rights Acts to State Prisoners Complaining of Denial of Medical Care,* 28 A.L.R. Fed. 279 (1976).

Thus, we conclude that if the trial court granted summary judgment on the eighth amendment claim on the grounds argued by the state, it erred. *See Gunter v. State,* 153 Ariz. at 388, 736 P.2d at 1200 ("The fact that the medicine was prescribed is *prima facie* evidence that it was needed.")

However, we can affirm if the trial court reached the right result for the wrong reason. *Realty Assoc. v. Valley Nat'l Bank,* 153 Ariz. 514, 738 P.2d 1121 (App.1986). Thus, we reach the issue presented at the start of this opinion: can an eighth amendment claim, by itself, support a claim for monetary damages? We conclude that after the plaintiff's § 1983 claim had been extinguished, he had no procedural vehicle to obtain damages directly through the eighth amendment.

The United States Supreme Court has sanctioned a direct cause of action for money damages based upon a constitutional violation only in limited cases against federal, not state, officers. *See Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (fourth amendment); *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (fifth amendment); and *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (eighth amendment). But the Court has held that such direct constitutional causes of action for money are defeated "when defendants show that Congress had provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective," or "when defendants demonstrate special factors counselling hesitation in the absence of affirmative action by Congress." *Carlson v. Green,* 100 S.Ct. at 1471. Although *Carlson* did not address whether the existence of the equally effective alternative statutory remedy of § 1983 would preclude a direct cause of action for damages under the eighth amendment against state officers, persuasive dictum in that decision suggests that a § 1983 plaintiff would have no such independent eighth amendment claim:

> Thus, although it does not appear that Congress explicitly stated that § 1983 is intended as the exclusive remedy for violations of constitutional rights by state officials, it could clearly be invasion of the legislative province for this Court to fashion a constitutional damages remedy against state officials that would exist concurrently with § 1983.... Here, Congress' action in adopting 42 U.S.C. § 1983 demonstrates that Congress has exercised its judgment in balancing the relevant policies and in determining the nature and scope of the damages remedy against state officials who violate an individual's federal constitutional rights. In light of traditional notions of separation of powers, its judgment is conclusive.

*Carlson v. Green,* 100 S.Ct. at 1489 n. 18 (Rehnquist, J., dissenting). Furthermore, the Supreme Court has found the existence of a statutory scheme providing a remedy for a constitutional violation to constitute a "special factor counselling hesitation" against a judicially inferred remedy for a constitutional violation. *See Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) (Plaintiff who had been demoted in retaliation for making critical statements to news media had no cause of action for nonstatutory damages under the first amendment in view of the available regulatory scheme providing meaningful remedies).

Thus, it appears that plaintiff's § 1983 claim and eighth amendment claim can exist only in a symbiotic relationship. One commentator explains that relationship:

Section 1983 fulfills a procedural or remedial role but does not itself create or establish any substantive rights. Thus, "one cannot go into court and claim a violation of 1983—for 1983 by itself does not protect anyone against anything." [quoting *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617, 99 S.Ct. 1905, 1915, 60 L.Ed.2d 508 (1979).] ... Section 1983 ... "is essentially a procedural or remedial device through which a party may seek relief for the deprivation of a constitutional ... right." [quoting *Schwartzberg v. Califano*, 480 F.Supp. 569, 573–74 (S.D.N.Y.1979).]

While § 1983 neither creates rights nor establishes jurisdiction, its functional role is critical. Although the Fourteenth Amendment establishes binding standards of conduct for state and local government, it does not authorize remedies when its provisions are breached. Section 1983 fills this vital gap. Without § 1983, courts would be confronted with determining whether to allow claims for relief directly under the Constitution. This issue arises when *Bivens*-type constitutional claims are asserted against federal officials. These claims are not, of course, covered by § 1983, because federal officials do not act under color of state law, but rather under color of federal law.... There is no federal statute that may fairly be considered a counterpart to § 1983 that applies to suits brought against those who acted under color of state law....

The Supreme Court has taken a cautious case-by-case approach in the *Bivens* area, recognizing some direct constitutional claims for relief while denying others when "special factors" have counselled hesitation. Section 1983 removes this type of uncertainty when constitutional claims are asserted against state and local officials.

M. Schwartz and J. Kirklin, *Section 1983 Litigation: Claims, Defenses, and Fees* (1986) at 8–9 and n. 42.

The United States Supreme Court has never recognized a right to recover damages for constitutional violations by state officials through any other method than by assertion of a § 1983 claim. *See generally Smith v. Department of Public Health*, 428 Mich. 540, 410 N.W.2d 749 (1987). At least one federal circuit has ruled that a plaintiff who has a right to sue for a constitutional violation under § 1983 has no right to sue for damages directly under the fourteenth amendment, because Congress has supplied a vehicle by which the right in question could be vindicated. *Turpin v. Mailet*, 591 F.2d 426 (2d Cir.1979) (en banc); *see also Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983); *Alaska v. Haley*, 687 P.2d 305 (Alaska 1984) (The court would not infer a damages remedy for a state constitutional provision where the legislature had provided a statutory cause of action.)

Based on the reasoning in these authorities, we conclude that a plaintiff who seeks monetary damages against state officials must do so under § 1983, and has no independent cause of action for damages derived directly from the eighth amendment, as applied to the state through the fourteenth amendment. Thus, because plaintiff's § 1983 claim was properly dismissed, his eighth amendment claim was also extinguished. The trial court therefore did not err in granting summary judgment on count two.

For the foregoing reasons, we affirm the judgment.

GERBER and BROOKS, JJ., concur.