596 P.2d 429

The IDAHO FIRST NATIONAL BANK,
a national banking association,
Plaintiff-Respondent,

v.

Ivyl W. WELLS and Novell M. Wells,
Defendants-Appellants.

No. 12572.

Supreme Court of Idaho.

June 11, 1979.

Robert F. McLaughlin and Michael R. McLaughlin, Mountain Home, for defendants-appellants.

Perce E. Hall of Hall & Friedly, Mountain Home, for plaintiff-respondent.

DONALDSON, Justice.

This is an appeal involving an action filed by plaintiff-respondent Idaho First National Bank (hereinafter Idaho First) to collect on separate guarantees signed by defendants-appellants Ivyl and Novell Wells for certain loans that the bank made to Powell Feed Lots, Inc.; of which the appellants were stockholders.

In 1972 Novell Wells and F. J. Powell operated a cattle feeding operation as partners under the name of Powell Feed Lots. In 1973 the appellants, as equal shareholders together with F. J. Powell, as president and shareholder, incorporated the operation under the name Powell Feed Lots, Inc.

On March 29, 1973 the bank made a loan to the corporation for $23,000 with a provi-

sion for $30,000 in optional future advances. The loan was secured by a mortgage on Owyhee County real property owned by the corporation. A second mortgage in the amount of approximately $8,000 covering the property was held by one Olive Hughes.

On March 29, 1973, Novell Wells signed a personal guarantee of the corporate debts of Powell Feed Lots, Inc., which guaranteed the debts of the corporation up to $200,000. On April 4, 1973, Ivyl Wells signed an identical guarantee.

On April 23, 1973 the bank commenced loaning operating funds to Powell Feed Lots, Inc. This debt is evidenced by a series of promissory notes signed by F. J. Powell as president of the corporation, amounting to $44,100 with the bank's liability ledger showing a principal balance owing at the time of suit of $39,013.37 plus interest.

Powell Feed Lots, Inc. defaulted on the loan secured by the real property in Owyhee County and in June, 1974, the bank foreclosed on the mortgage. The property was sold at Sheriff's sale for $35,000. The bank only asserted rights to $23,000 of the proceeds, the face amount of their mortgage. Appellants Wells, as holders of third and fourth mortgages, redeemed the property for the sale price.

In September, 1974, the bank filed this action based on the guarantees to collect some $39,013.37 of indebtedness owed by Powell Feed Lots, Inc. to the bank plus interest at a rate of 9½ percent per annum and attorney fees of $5,000 for collecting on the guarantees.

Appellants' version of the above factual setting is in conflict with most of the evidence produced at trial by the bank. Appellants contend that in February, 1972, Novell Wells contacted the local branch manager of the respondent bank, Mr. Cook, and inquired into the soundness of investing in Powell's cattle operation. Mr. Cook advised him it was a good business and Novell Wells entered into a limited partnership with Powell. Cook assured Wells that "a supervised account" would be maintained and that he would be advised of all partnership transactions.

Appellants further contend that after incorporation of the operation, Cook again advised Novell Wells that a supervised account would be maintained and that the budget submitted by Novell and Ivyl Wells for the corporation would be strictly adhered to.

As to the guarantees, appellants contend that they were furnished to them in blank and that the bank after receiving their signatures filled them in without the appellants' knowledge. Appellants contend there were $35,000 in overdrafts by the corporation at the time they signed the guarantees, of which they were not advised.

Appellants contend on April 23, 1974 they were again advised by Mr. Cook that the corporation was in sound shape and were told they would receive the supervised account statements, which they never received.

As to the $44,000 in loans made to the corporation, the appellants contend it was done without their knowledge. Appellants contend the first time they were confronted with the true picture and their liability was March 6, 1974 in a meeting between them and the bank and its attorney.

After the bank commenced this action, the appellants filed a counterclaim which enumerated two claims for relief. The first claim for relief was based on the Idaho Consumer Protection Act, claiming a violation on the basis of the guarantees allegedly being signed in blank. The second claim for relief was framed in terms of a wrongful preference to a second mortgagee or impairment of collateral based on the bank's action in only foreclosing on the face value of its mortgage ($23,000) rather than the full amount including advances ($53,000). Both causes of action were dismissed by way of summary judgment. The trial court also denied appellants' motion to amend their pleadings to join F. J. Powell as a third party defendant.

After a trial held in January, 1977, the jury returned a verdict in favor of Idaho First National Bank. The jury made several special findings which can be summarized as follows:

1. That the plaintiff had proved all of the propositions which it had the burden of proving.

2. That the defendants had not established their affirmative defense of failure of consideration.

3. That the defendants had failed to prove all elements necessary to establish their affirmative defense that the plaintiff materially altered the guarantees.

4. That the defendants had failed to prove all elements necessary to establish their affirmative defense of fraud by clear and convincing evidence.

Judgment was entered on January 15, 1977 in favor of the plaintiff for the sum of $39,013.37 principal, $5,372.46 interest, $9,000 attorney fees and $767.45 in costs.

I

Appellants initially contend the trial court erred in dismissing their counterclaim which was based on the Idaho Consumer Protection Act (I.C. § 48–601 et seq.). "Obtaining the signature of the buyer to a contract when it contains blank spaces to be filled in after it has been signed" is declared an unfair or deceptive practice under the Act. I.C. § 48–603(12). Appellants argue that the guarantees they signed contained blanks which were later filled in by the bank and thus gives rise to a claim for relief under the Idaho Consumer Protection Act. I.C. § 48–608 states "any person who purchases or leases goods or services and thereby suffers any ascertainable loss of money . . . as a result of the use or employment by another person of a method, act or practice declared unlawful by this act . . . may bring an individual (action) . . . to recover actual damages."

■ Appellants argue that their guaranteeing of the Powell Feed Lots' loan constituted a purchase of goods thus falling under the purview of the act. We disagree with appellants' analysis of the scope of the Idaho Consumer Protection Act. Although "goods" defined under the act include intangible property which could encompass money, it would take a strained construc-tion of the act to be able to hold that the signing of a personal guarantee for a loan to a corporation was a "*purchase of goods.*"

Further, I.C. § 48–604 states:

(1) It is the intent of the legislature that in construing this act due consideration and great weight shall be given to the interpretation of the federal trade commission and the federal courts relating to section 5(a)(1) of the federal trade commission act (15 U.S.C. 45(a)(1)), as from time to time amended; and . .

The Federal Trade Act clearly exempts banks, stating:

The Commission is empowered and directed to prevent persons, partnerships, or corporations, *except banks* . . . from using unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce. (emphasis ours)

15 U.S.C. § 45(a)(6).

Appellants cite 15 U.S.C. § 57a(f)(1) for support of the proposition that banks are within the coverage of the FTC Act and thus within the coverage of the Idaho Consumer Protection Act. That section requires, with some exceptions, that the Board of Governors of the Federal Reserve System issue regulations proscribing acts or practices of banks which are substantially similar to the unfair or deceptive act or practices rules issued by the FTC. However, the legislative history of this provision appears to rebut appellants' argument that banks are covered by the FTC Act. "Under the Federal Trade Commission Act the Commission does not have the authority to regulate banks. This legislation does nothing to change this situation." [1974] U.S. Code Cong. & Admin.News, p. 7729. The clear language of the Idaho Consumer Protection Act together with the persuasive authority of the Federal Trade Commission Act demonstrate that the act complained of by the appellants is not within the scope of the Idaho Consumer Protection Act. Appellants' assignment of error is therefore without merit.

## II

Appellants argue that the trial court erred in dismissing by way of summary judgment their counterclaim which was framed in terms of a wrongful preference. The facts surrounding this claim are as follows. On March 29, 1973, Idaho First made a loan to Powell Feed Lots, Inc. for $23,000 with interest secured by real property owned by the corporation. The mortgage also secured up to $30,000 in future optional advances to the corporation. The language of the mortgage states in part: "To secure payment of any note or notes given by said mortgagor to mortgagee for future loans and advances to the amount of, but not in excess of, Thirty Thousand Dollars which said mortgagee may at his option make to said mortgagor." The initial $23,000 loan was made. On March 29, 1973 and April 4, 1973 the defendants-appellants Wells signed personal guarantees for the corporation's debts. Commencing April 23, 1973 Idaho First began advancing funds to Powell Feed Lots in the total amount of $44,100. Powell Feed Lots defaulted on the real estate mortgage loan and Idaho First instituted foreclosure proceedings. The property was encumbered as follows: (1) A first mortgage held by Idaho First; (2) a second mortgage held by Olive Hughes; and (3) a third and fourth mortgage were held by the appellants.

The foreclosure sale netted $35,000. Idaho First only asserted the right to $23,000 from the sale. (Full mortgage value was $53,000 if full amount of optional advances were made, $23,000 if only initial loan was made). Approximately $8,000 was secured by a second mortgage held by Olive Hughes. The appellants redeemed the property in question by virtue of their third mortgage and payment of the purchase price.

Appellants appear to argue that Idaho First by failing to assert rights to the full amount secured by their mortgage ($53,000 versus $23,000) gave an unlawful preference to the second mortgagee, Hughes, and also impaired collateral of the original debtor, Powell Feed Lots, Inc. Appellants basically argue that Idaho First had a duty to collect from the original debtor, Powell Feed Lots, Inc. to the full extent possible before coming to them as guarantors for payment. In support of this theory appellants cite *Universal C. I. T. Credit Corp. v. Whitworth*, 77 Idaho 528, 534, 296 P.2d 712, 718 (1956), wherein this Court stated:

It is a fundamental principle of the law of guaranty that, with respect to additional security for the payment of a debt, the creditor stands in the position of a trustee for the guarantor, and, if a creditor surrenders or impairs collateral security without the consent of the guarantor, the latter is released to the extent of such negligent loss, impairment, or surrender.

However, the bank did not have senior mortgage rights in the property to the full extent of the $53,000 secured. The general rule in the United States is that if a future advance is obligatory, it takes its priority from the original date of the mortgage, and the subsequent creditor is junior to it. However, if the advance is optional, and if the mortgagee has notice when the advance is made that a subsequent creditor has acquired an interest in the land, then the advance loses its priority to that creditor. Osborne, Real Estate Financing Law 759 (1979). Idaho is in accord with the general rule. In *Biersdorff v. Brumfield*, 93 Idaho 569, 573, 468 P.2d 301, 304 (1970), this Court stated:

A senior mortgage for future advances will maintain seniority for advances made after actual notice of a junior lien if, but only if, there was a contractual obligation to make such advances existing prior to the notice of the junior lien.

Idaho Code § 45–108 is to the same effect.

The record in the instant case discloses that prior to making any future advances the bank had notice of the second mortgage on the property held by Hughes. Further, the language of the mortgage agreement and testimony at trial supports the conclusion that the bank's obligation to make future advances was optional. Therefore, the bank only had senior priority for the face value of the mortgage ($23,000),

the exact amount they foreclosed for. Any rights in the property for the future advances made by the bank would be subordinate to the intervening mortgage of Hughes. Although the bank could have asserted an interest in the property for future advances which would have been next in priority after the Hughes' mortgage, the failure to do so caused no harm to the appellants since they redeemed the property by virtue of their third mortgage which immediately followed the Hughes' mortgage in the priority schedule. The trial court, therefore, did not err in dismissing appellants' counterclaim based on preference or impairment of collateral.

### III

 Appellants contend that the trial court erred in not permitting them to amend their answer to join F. J. Powell in the action as a third party defendant. The proposed amendment took place approximately two years after the filing of the bank's complaint and five months prior to the actual trial. The third party complaint set forth claims for relief against Powell seeking contribution for any liability appellants might incur by virtue of their guarantees. Appellants' claim for contribution is based on the allegation that F. J. Powell was a co-guarantor and therefore jointly and severally liable. Appellants' third party complaint set forth additional claims for relief against F. J. Powell based on fraud in inducing the appellants into guaranteeing the loans and a breach of fiduciary duty by F. J. Powell as president of Powell Feed Lots, Inc. in not informing the appellants of the poor financial situation of the corporation. We do not believe the trial court abused its discretion in not permitting amendment of appellants' answer to allow assertion of a third party complaint. The decision of whether to permit amendment of a pleading is vested in the sound discretion of the trial court. *Smith v. City of Preston*, 99 Idaho 618, 586 P.2d 1062 (1978); *Jones v. Watson*, 98 Idaho 606, 570 P.2d 284 (1977). The trial court stated that "the granting of defendant's motion at this late stage of the proceedings would complicate

and delay the principal action and impose an unwarranted hardship on plaintiff. . . ." We agree with the trial court's analysis of the consequences of allowing the amendment and therefore hold that the trial court did not abuse its discretion in denying appellants' motion to amend their complaint to add a third party defendant.

### IV

Appellants next assign as error the trial court's admission in evidence, over proper objection, of several promissory notes entered into between Idaho First National Bank and Powell Feed Lots, Inc. Appellants argue that the bank failed to establish sufficient foundation to authenticate the notes and that admission of photocopies of the promissory notes violated the "best evidence rule."

 Admission of photocopies of the original promissory notes was permissible under an exception to the "best evidence rule." The theory underlying the best evidence rule was stated as follows:

> The best evidence rule is designed to foster accuracy in the presentation of evidence found in writings. No party should be permitted to prove the contents of a document by secondary proof when it is within his power to produce the original. It is a preferential rule limited to documentary evidence. The application of the rule results in the exclusion of secondary evidence except when a party is unable, through no fault of his own, to produce the original.

Bell, Handbook of Evidence for the Idaho Lawyer 208 (2d ed. 1972).

Idaho Code § 9–411 is the codification of the best evidence rule in Idaho. Idaho Code § 9–411 provides in relevant part:

> There can be no evidence of the contents of a writing other than the writing itself, except in the following cases:
>
> 1. When the original has been lost or destroyed; in which case proof of the loss or destruction must first be made.

2. When the original is in the possession of the party against whom the evidence is offered, and he fails to produce it after reasonable notice.

3. When the original is a record or other document in the custody of a public officer. . . .

A review of the record indicates that the bank made an adequate showing of loss and inability to produce the originals such that secondary evidence of the promissory notes could be admitted in evidence. Admission of the photocopies of the notes was not violative of the "best evidence rule" under the terms of I.C. § 9–411.

The trial court, however, did err in admitting the promissory notes in evidence over the objection by appellants that there was no proper foundation laid for authentication. For writings, which are not self-authenticating, it is necessary to provide other proof of its genuineness than the mere writing itself before the writing is admissible. Bell, Handbook of Evidence for the Idaho Lawyer 184 (2d ed. 1972). The purported signature or recital of authorship on the face of a writing will not be accepted as sufficient preliminary proof of authenticity for the admission of a writing in evidence. *State v. Golden*, 67 Idaho 497, 186 P.2d 485 (1947); McCormick on Evidence § 218 (E. Cleary ed. 1972). Idaho Code § 9–405 provides that a writing may be authenticated either (1) by anyone who saw the writing executed; (2) by evidence of genuineness of the handwriting of the maker; or (3) by a subscribing witness. The evidence offered by the bank to establish the authenticity of the promissory notes failed to meet any of the specifications provided for in the statute. The trial court erred in admitting the promissory notes in evidence without proper authentication.

However, admission of improper evidence is immaterial on appeal where there is other competent evidence to the same effect from which the jury could draw the result reached. *Neilson v. Davis*, 96 Idaho 314, 528 P.2d 196 (1974); *In re Brock's Estate*, 94 Idaho 111, 482 P.2d 86 (1971); *County of Bonner v. Dyer*, 92 Idaho 699, 448 P.2d 986 (1968). The bank's action, contrary to appellants' assertion, was not based on the notes but was based on appellants' individual guarantees. The guarantees in question personally guaranteed any and all indebtedness of Powell Feed Lots, Inc. The indebtedness of Powell Feed Lots, Inc. could logically be evidenced by the promissory notes or otherwise. Our review of the record indicates that there was sufficient direct testimony and documentary evidence, absent the promissory notes, to establish the loans to Powell Feed Lots by the bank and the amount due and owing on those loans at the time of suit. We therefore find no reversible error in the trial court's admission in evidence of the promissory notes.

V

Appellants finally contend that the jury's verdict was against the weight of the evidence. Appellants' argument concerning this assignment of error is twofold. Initially they argue that the trial court erroneously admitted in evidence the promissory notes signed by Powell Feed Lots, Inc. and that absent those notes the jury did not have sufficient evidence before it to determine that Powell Feed Lots, Inc. had incurred a debt for which appellants would be liable as guarantors. We have previously disposed of this contention in this opinion, finding other adequate evidence in the record from which the jury could conclude that Powell Feed Lots, Inc. had incurred a debt to the respondent bank. This argument is therefore without merit.

Next appellants contend that contrary to the jury's special findings the evidence clearly shows that the appellant received the guarantees with blanks which were later filled in by the respondent bank. The record does not support appellants' contention. The record contains conflicting evidence as to whether the guarantees contained blanks when signed by the appellants. It is oft stated by this Court that where a jury's verdict is supported by substantial and competent though conflicting evidence, a judgment based thereon will not

be set aside on appeal. *Fowler v. Uezzell*, 94 Idaho 951, 500 P.2d 852 (1972); *Bell v. Joint School Dist. No. 241*, 94 Idaho 837, 499 P.2d 323 (1972). There is clearly substantial and competent evidence in the record to support the jury's finding that the guarantees were not received in blank by the appellants and later materially altered by the respondent bank.

We have examined appellants' other assignments of error and find no grounds for reversal in them. Respondent bank seeks attorney fees on appeal by virtue of the provisions of the guarantees which provide for the recovery of such fees incurred in an action to collect on the guarantees. Respondent having complied with the requirements of I.A.R. 41 may recover reasonable attorney fees for the defense of this appeal.

Judgment affirmed.

SHEPARD, C. J., BAKES and BIST-LINE, JJ., and SCOGGIN, J., Pro Tem., concur.