704 P.2d 1348

**Verna PEARLL,**
**Plaintiff/Appellee/Cross-Appellant,**

v.

**Donald I. WILLIAMS and Patricia L. Williams,**
**Defendants/Appellants/Cross-Appellees.**

**No. 2 CA–CIV 4889.**

Court of Appeals of Arizona,
Division 2.

Feb. 22, 1985.

Reconsideration Denied April 11, 1985.

Review Denied Aug. 20, 1985.

Tanis A. Duncan, Tucson, for plaintiff/appellee/cross-appellant.

J. Marc Montijo, Tucson, for defendants/appellants/cross-appellees.

## OPINION

HOWARD, Judge.

On November 1, 1978, appellee agreed to loan $7,000 to appellants Donald and Patricia Williams. A promissory note was executed by the parties on this date providing for repayment of the principal and 10% annual interest "on or before 3 months from date." The last sentence of the note preceding appellants' signatures stated that the note was secured by "an assignment on the closing of Escrow S.W. 12055." At the same time, a second realty mortgage was executed by the Williamses evidencing an indebtedness to appellee of $7,000. The property subject to the mortgage was the real property located at 5360 Old Spanish Trail in Tucson. Among the clauses appearing in the mortgage were the following:

"Provided always, and these presents are upon the express condition that if the Mortgagor shall pay or cause to be paid to the Mortgagee the just and full sum of SEVEN THOUSAND AND no/100 === Dollars,

This is an open end mortgage with interest thereon, according to the *condi-tions of a certain promissory note, of even date herewith,* executed by the Mortgagor to the Mortgagee, ... In case of the non-payment of any sum or sums of money, either principal, interest, taxes, assessments, or premiums for insurance, herein mentioned or secured, at the time or times when the same shall become due and payable, agreeable to the conditions of said note or these presents, or in case of the failure of the Mortgagor to keep and perform any other agreement, stipulation, covenant or condition herein mentioned. Then and in such case the whole principal sum of said note shall, at the option of Mortgagee, be deemed to have become immediately due, and the same, with all other costs and charges, each and all with interest at the highest legal rate allowable shall thereupon be collectible by a suit at law or by foreclosure of this mortgage in the same manner as if the whole of said principal sum had been made payable when any such failure shall occur as aforesaid.

\* \* \* \* \* \*

In case complaint is filed for the foreclosure of this mortgage, Mortgagor hereby covenants and agrees that he will pay to the Mortgagee, in addition to the expenses and costs of the foreclosure suit, reasonable amount found due, as attorney's fees, and the amount paid by Mortgagee for a title search in preparing such suit, to be included in and become a part of the settlement, if one be made before judgment, or of the judgment, as the case may be and be a lien upon said premises and be secured by this mortgage." (Emphasis added)

Immediately adjacent to the phrase "SEVEN THOUSAND AND no/100" and above the phrase "This is an open end mortgage", both Donald and Patricia Williams wrote their initials.

According to the briefs and pretrial memoranda, appellants did not own the property at 5360 Old Spanish Trail until November 8 or 9, 1978, at which time they apparently acquired at least a beneficial interest. Ap-

pellants signed the mortgage on November 1, however, and their signatures were duly notarized. This mortgage was recorded by appellee on April 10, 1979.

On April 1, 1979, appellee loaned appellants an additional $5,100. The parties executed a new promissory note on that date in the amount of $12,100 "with interest thereon from April 1st, 1979 at the rate of 12% percent per annum on the balance of principal remaining from time to time unpaid." Appellants subsequently agreed in writing to an increase in the interest rate to 15% per year. Repayment was due in full on or before June 1, 1979. This note was secured by "a second mortgage on real property."

In addition to these notes, appellants executed a promissory note in the amount of $17,000 to Lloyd and Shirley Van Someren on November 15, 1978. This was somehow related to appellants' purchase of the property at 5360 Old Spanish Trail from the Van Somerens, who transferred right, title and interest to appellants on November 8 in exchange for $17,000 down and the assumption of a $61,000 mortgage. As security for the note, appellants executed a mortgage on November 15, using the same real property as security. This mortgage was recorded on January 3, 1979. An assignment of this mortgage to Evert and Jennie Plantage, dated December 19, 1978, was recorded on January 4, 1979.

On December 22, 1981, appellee exercised her right to declare in default the $7,000 loan and interest thereon to accelerate the payments due and owing, and to foreclose on the November 1, 1978, mortgage. Apparently copies were forwarded to appellants, the Van Somerens, the Plantages and to other parties with security interests in the property. On January 8, 1982, a complaint in contract foreclosure was filed by appellee, seeking $13,894.37 for principal and interest on "the promissory note," plus interest from the time of judgment to the time of satisfaction of the debt, plus attorney's fees, costs and delinquent property taxes and insurance premiums. She also requested that the mortgage be foreclosed, the subject property sold by the sheriff, and that she be declared senior lienholder to all but two parties not relevant to our determination of this case.

After considering a stipulation of the facts by appellee and appellants, trial memoranda, affidavits and memoranda in support and opposition to appellee's motion for summary judgment and arguments to the court, the trial court found in favor of appellants and judgment was entered on December 17, 1982. On December 27, 1982, after a phone call by appellee's counsel to the trial judge, the judgment was vacated by the trial court, sua sponte, and further memoranda and arguments were ordered. On April 19, 1983, after hearing arguments of counsel, the trial judge reversed himself and found that the November 1978 mortgage was valid in the sum of $7,000, the original loan amount, and ordered foreclosure thereof and a sheriff's sale to satisfy the judgment. The court also held that the subsequent loan of $5,100 was not secured by the mortgage. It allowed appellants credit for payments to Southwest Savings pursuant to the first mortgage but awarded appellee all payments made by her to preserve her rights as lienholder. The total awarded to appellee was $22,372.75 plus costs, and each side was ordered to pay its own attorney's fees.

Appellants contend in their first issue on appeal that the promissory note was secured solely by the assignment of escrow S.W. 12055, which involved another parcel, and that the note was not related to the second realty mortgage executed by the parties on the same day. They also argue that the mortgage was invalid because they had no ownership interest in the property at the time the mortgage was executed. We disagree.

█ It is clear from the face of the mortgage that the two documents are related. The first part of the mortgage, reprinted and emphasized above, clearly acknowledges the existence of a corresponding promissory note executed on the same day. That reference can only be to the

promissory note in question here, given the evidence in the record. The note unambiguously states that the security therefor was the assignment of an escrow account. The general rule is that when the terms of a note and a mortgage conflict, the terms of the note prevail. 11 Am.Jur.2d, Bills and Notes, § 71 (1963). However, under Arizona law, substantially contemporaneous instruments will be read together to determine the nature of the transaction between the parties. *Phoenix Title and Trust Company v. Stewart*, 337 F.2d 978 (9th Cir.1964) *cert. denied* 380 U.S. 979, 85 S.Ct. 1335, 14 L.Ed.2d 273 (1965). There is nothing in the record of this case or in the limited case law presented to suggest that the acknowledgment of one form of security for the note within the body of the note necessarily excludes the use of additional or independent security. Appellants signed a valid security instrument, the November 1, 1978, second realty mortgage. They are bound by their actions.

■ We find no merit in the appellants' contention that the mortgage was invalid because they did not yet own the property subject to the mortgage. This argument ignores the Arizona statute and case law regarding after-acquired property. A.R.S. § 33–703(B) specifically provides that "[t]itle acquired by the mortgagor subsequent to the execution of the mortgage inures to the mortgagee as security as if acquired before the execution." Appellants acquired right, title and interest to the property secured by the mortgage one week after the parties executed the note and mortgage. Under the statute, appellee's interest in the property arising from the mortgage ripened at the moment the appellants acquired beneficial or legal title to that property and related back to the date the mortgage was executed. The mortgage was valid.

Appellants raise two more issues in this case, but do so for the first time on appeal. Both questions concern the validity of the trial court's vacation and subsequent reversal of the December 17 judgment in favor of appellants and the ethical considerations arising from the facts surrounding these actions. We refrain from addressing them because appellants failed to formally raise them at the trial level. *Brown Wholesale Electric Company v. Safeco Insurance Company of America*, 135 Ariz. 154, 659 P.2d 1299 (App.1982). We note that the outcome of the substantive question regarding the validity of the mortgage would not change even if we were to address these last two issues, given our decision upholding the instrument as a matter of law.

■ On cross-appeal, appellee challenges the trial court's decision not to uphold the so-called "dragnet clause" of the mortgage, arguing that the promissory note executed on April 1, 1979, specifically referred to the mortgage executed on November 1, 1978, that the second loan was of the same character as the first, and that the second loan was therefore secured by the mortgage. Alternatively, she apparently argues that the instruments, when read together, indicate an intent by the parties to secure the entire debt of $12,100 with the second mortgage executed on November 1. Since our review is limited to the construction of the instruments submitted to the trial court, we stand in the same position as the court and are not bound by its conclusions. See *Atchison, Topeka and Santa Fe Railway Company v. Williams Energy Company*, 135 Ariz. 541, 662 P.2d 1048 (App. 1983).

As noted above, the original mortgage executed by these parties stated that it was open-ended and this particular section of the instrument was initialed by both appellants. The promissory note was executed on April 1, 1979, and refers to "a second mortgage on real property" as its security. There is no other evidence or testimony concerning the second loan.

■ An open-end mortgage "provides for future advances on the given mortgage and increases the amount of the existing mortgage." *Griffith v. State Mutual Building & Loan Ass'n.*, 46 Ariz. 359, 51 P.2d 246 (1935); Black's Law Dictionary, 984 (rev. 5th ed. 1979). The open-end mort-

gage, like other dragnet clauses, "constitutes a continuing offer by the borrower to secure future loans under the security." *Union Bank v. Wendland,* 54 Cal.App.3d 393, 404, 126 Cal.Rptr. 549, 557 (1976); See Annot., 3 A.L.R. 4th 690 (1981). In *Union Bank,* supra, two tests are suggested as methods for analyzing whether the security of the first loan also secures a second loan when a dragnet clause is used. Under the "relationship of the loans" test, the security instrument will secure both loans where the parties' intent to do this is inferred from the connection between the loans or from their substantially similar nature. The "reliance on the security" test determines whether the second loan relied on the original security. Under this second test, the continuing offer to secure future loans with the first security instrument is not accepted when, for example, the second loan utilizes different security.

Under the "reliance on the security" test, we find as a matter of law that the trial court erred. Although we are presented with nothing but the relevant documents, we find that the language of the April 1 promissory note and the November 1 mortgage sustains appellee's claim. In addition to the fact that appellants initialed the open-end mortgage phrase in the mortgage, the second promissory note states that its security was "a second mortgage on real property." Since there is only one second mortgage at issue here and the parties to both documents are the same, the inference can be drawn without difficulty. Further, applying the continuing-offer definition of open-end mortgage to this case, we find nothing in the second promissory note that indicates that different security would be used or, alternatively, that the second note would be unsecured. Appellants cite *Emporia State Bank and Trust Company v. Mounkes,* 214 Kan. 178, 519 P.2d 618 (1974), for two propositions: (1) that dragnet clauses should be strictly construed, and (2) that indebtedness arising from entirely independent transactions is not covered by the dragnet clauses. While we may agree with these propositions in general, we find that

the second promissory note was secured by the mortgage nonetheless. We take note of the Kansas Supreme Court's emphasis in *Emporia* on the failure of the parties in that case to make reference in the second note to the mortgage which secured the first debt. As mentioned, the second note in our case did refer to the mortgage as the security for the loan.

We find that the appellants incurred two obligations, both of which were secured by a valid mortgage. The trial court's judgment is amended to award to the appellee the money arising from the second promissory note plus interest, taking into account the interest already awarded pursuant to the first loan of $7,000, and the case is remanded for a determination by the trial court of reasonable attorney's fees in the trial court pursuant to the provisions of the mortgage.

BIRDSALL, C.J., and MICHAEL J. BROWN, Superior Court Judge, concur.
NOTE: JAMES D. HATHAWAY, J., having recused himself in this matter, MICHAEL J. BROWN, J., was called to sit in his stead and participate in the determination of this decision.