**In re Juel SWEATTE, Debtor.**

**AMERICAN EXCHANGE BANK AND TRUST COMPANY,
Plaintiff/Appellee,**

v.

**WASHINGTON INSTITUTE FOR GRAD-UATE STUDIES and Devonshire Lodge—Order of Liberty, Ltd., Defendants/Appellants.**

CIV–86–1691–A.

BK–84–01144–A.

Adv. No. 85–007.

United States District Court,
W.D. Oklahoma.

July 27, 1987.

Steven Dobbs, Pearch & Dobbs, Oklahoma City, Okl., for debtor.

D. Kent Meyers, Ann L. Faford, & Mack J. Morgan, Crowe & Dunlevy, Oklahoma City, Okl., for plaintiff/appellee.

Gary James Joslin, Sandy, Utah, for defendants/appellants.

## ORDER

ALLEY, District Judge.

This is an appeal of a March 13, 1986 order of the bankruptcy court declaring that a mortgage created a valid lien on certain real property located in Norman, Oklahoma. Appellants, the Washington Institute for Graduate Studies (Washington Institute) and Devonshire Lodge Order of Liberty, Ltd. (Devonshire Lodge), allege that the mortgage did not create a valid lien and that the bankruptcy court's decision should be reversed.

### (i)

The record indicates that, prior to July, 1982, Juel and Ruth Elaine Sweatte, the debtors, and Kelly and Gerald Sieber, the Sweattes' daughter and son-in-law, were indebted to the appellee the American Exchange Bank and Trust Company (the Bank) in the principal amount of $961,-034.46. Most of this indebtedness arose from the guarantee of the debts of an automobile dealership, All American Cars, Inc., of which Gerald and Kelly Sieber were president and vice-president.

By early July, 1982, several of the notes that had been executed by the Sweattes, the Siebers, and All American Cars, Inc. in favor of the Bank were due and in default. In addition, All American Cars, Inc. had presented several checks to the Bank that were drawn on insufficient funds, and the Bank had come to believe that the dealership had breached the security agreement by disposing of automobiles that had been pledged as collateral. As a result, it directed one of its vice-presidents, Mr. James R. Wills, to renegotiate the debt with the Sweattes and the Siebers. The Bank wished to obtain new notes that would be secured by liens on property owned by the Sweattes, the Siebers, and the entities affiliated with them.

Pursuant to these negotiations, on August 6, 1982, Mr. Wills prepared the real estate mortgage now at issue. It described four tracts, all located in Block 5 of Lydick's Second Addition to Norman, Oklahoma. The four tracts were then held by a trust, the Timothy Trust, of which Ruth Elaine Sweatte was co-trustee. However, in late August, 1982, the tracts were conveyed from the Timothy Trust to the Sweattes. The mortgage stated that it was "taken to secure all loans with All American Cars, Inc., Juel and Elaine Sweatte, and Gerald and Kelly Sieber." [1]

On the same day, Mr. Wills delivered the mortgage to Kelly Sieber at the car lot of All American Cars, Inc. and requested that she and Gerald Sieber and the Sweattes sign it. At this time, the second paragraph of the mortgage read:

This mortgage is given to secure payment of the principal sum of _____ dollars and interest thereon, according to the terms of certain promissory note or notes of even date herewith, signed by the mortgagor, the final payment thereon being due _____.

In accordance with Mr. Wills' request, Kelly Sieber delivered the mortgage to Gerald Sieber and the Sweattes on August 6, 1982. Upon receiving the mortgage, Ruth Elaine Sweatte crossed out the description of one of the tracts and then signed the mortgage. Juel Sweatte and Gerald and Kelly Sieber signed the mortgage on the same day. However, none of these signatures was acknowledged.

On the evening of August 6, 1982 Kelly Sieber took the signed mortgage to the Bank. Since Mr. Wills had left the Bank for the evening, she gave the mortgage to another of the Bank's employees, a Mr. Bill Knapp. Sometime during the next few days, Mr. Wills reviewed the signed mortgage and inserted "one million dollars and

---

1. Mr. Wills prepared the mortgage on a printed form into which he inserted some typewritten language. The legal description of the four tracts and the statement that the mortgage was taken to secure all loans with All American Cars, Inc., the Sweattes and the Siebers were typewritten.

no/100" in the blank for the amount of the debt secured and "August 11, 1983" in the blank for the date of final payment. Wills also had the mortgage acknowledged by a notary without the Sweattes or the Siebers being present. On August 11, 1982, he recorded the mortgage with the Cleveland County Clerk.

Although the Sweattes and the Siebers signed the mortgage, their interpretation of this act differed sharply from that of the Bank's. According to them, upon delivering the mortgage to Kelly Sieber, Mr. Wills stated that the Sweattes and the Siebers were to sign it only as an indication of their good faith in undertaking the renegotiation of their indebtedness. They maintained that Mr. Wills told Kelly Sieber that the mortgage would not be recorded. On the other hand, Mr. Wills denied making such statements. He argued throughout the proceedings that the mortgage was intended by all the parties to create a valid lien on the property it describes.

In November, 1982, the Bank brought an action in Cleveland County District Court to foreclose on several mortgages executed by the Sweattes and Siebers, including the August 6, 1982 mortgage. The case was removed to the bankruptcy court of this district on January 4, 1985, and on February 20, 1986, the issue of the validity of the August 6, 1982 mortgage was tried.[2] The validity of the mortgage was contested not only by the Sweattes and the Siebers but by the Washington Institute and Devonshire Lodge, the appellants here. These two organizations claimed title to the tracts described in the mortgage under a quitclaim deed of February 27, 1984 from the Timothy Trust.

In its findings of fact and conclusions of law, issued on March 13, 1986, the bankruptcy court determined that the August 6, 1982 mortgage was valid and that Bank had a valid lien on the tracts that it described (excluding the one crossed out by Ruth Elaine Sweatte). On April 8, 1986, the bankruptcy court entered a judgment ordering that the mortgage be foreclosed and the real estate sold to satisfy the judgment. The bankruptcy court declared that from and after the sale of the real estate, the Timothy Trust, the Washington Institute, the Devonshire Lodge, and all persons claiming under them were forever barred from all right, title, interest, estate, or equity in the subject property.

■ On appeal to this Court, the Washington Institute and Devonshire Lodge argue that the bankruptcy court's conclusion of law are erroneous in several respects. The Bank responds that the appellants have no standing to bring this appeal and that the bankruptcy court's conclusions of law should be affirmed. Since this is an appeal of the decision of a bankruptcy court, the Court must make an independent determination of the applicable law. *Matter of Dunes Casino Hotel*, 63 B.R. 939, 944 (D.N.J.1986); *In re Cricker*, 46 B.R. 229, 230 (D.Ind.1985).

(ii)

■ The Bank's argument with regard to standing is based on the fact that the Washington Institute and Devonshire Lodge did not introduce any evidence at trial that they had an interest in the property described in the mortgage. The Court is not persuaded by this argument. In order to have standing to appeal an order of a bankruptcy court, an appellant need only demonstrate that the bankruptcy court's decision caused him an injury in fact and that the interest he seeks to protect through his appeal is one that the Bankruptcy Act seeks to protect or regulate. *In re Multiple Services Industries, Inc.*, 46 B.R. 235 (E.D.Wisc.1985); *In re Harwald Co.*, 497 F.2d 443, 444–445 (7th Cir.1974).

■ In this instance, it was the Bank itself that sought and obtained a judgment from the bankruptcy court declaring both the Washington Institute and Devonshire Lodge to be forever barred from any rights in the tracts of land described in the Au-

---

2. The Bank argued that the mortgage was valid against three of the four tracts originally described therein. It did not argue that the mortgage was valid against the tract whose description Ruth Sweatte had crossed out.

gust 6, 1982 mortgage and quitclaimed to them by the Timothy Trust. The Court thus finds that the appellants have sustained an injury in fact as a result of the bankruptcy court's order. Moreover, as this case is in part an action to determine the priority of liens on real estate, it involves an interest that the Bankruptcy Code seeks to protect and regulate. *See e.g.,* 11 U.S.C. § 506; 11 U.S.C. § 522. Accordingly, the Court concludes that the Washington Institute and the Devonshire Lodge do have standing to bring this appeal.

### (iii)

The Washington Institute and Devonshire Lodge first challenge the bankruptcy court's application of the doctrine of after-acquired title. They argue that the property in question was not subject to the mortgage because the Sweattes and the Siebers never acquired title to it. According to the Washington Institute and Devonshire Lodge, this is so for two reasons. First, the deed that purportedly conveyed title to the tracts in question from the Timothy Trust to the Sweattes and the Siebers was signed by only one of the trustees of the Timothy Trust, a Mr. Charles Samuels. Second, the deed purported to convey the tracts to Juel and Ruth Elaine Sweatte. Since Juel Sweatte was not a beneficiary of the Timothy Trust, the appellants argue, the conveyance was invalid.

■ A review of the record indicates that these contentions were not raised by the appellants at trial and that, as a result, the bankruptcy court made no findings concerning them. They are thus not to be considered on appeal. *In re Gardner,* 455 F.Supp. 327, 329 (D.C.Ala.1978).

■ However, it should be noted that, even were these matters properly before the Court, they would not justify a reversal of the bankruptcy court's decision. As to the alleged lack of a trustee's signature, it is true that the record contains several deeds signed only by Charles Samuels that convey the subject tracts from the Timothy Trust to the Sweattes. However, it also contains several deeds executed by Ruth

Elaine Sweatte as co-trustee of the Timothy Trust that convey the same tracts to the Sweattes. Thus, appellant's assertion that only one of the trustees of the Timothy Trust approved the conveyance to the Sweattes is without merit.

■ The contention that the conveyance of the tracts to Juel Sweatte was improper because he was not a beneficiary of the Timothy Trust is also not supported by the record or the applicable law. Most importantly, since the appellants have presented no evidence as to the terms of the trust agreement, no determination can be made as to who is or is not beneficiary of the Timothy Trust. Moreover, under Oklahoma law, unless the trust instrument otherwise provides, the trustee is authorized to sell the trust property without regard to the status of the purchaser. Okla.Stat. tit. 60 § 175.24(B) (Supp.1986); *Pipkin v. Pipkin,* 370 P.2d 826, 829 (Okla.1962). Accordingly, the fact that the tracts in question were conveyed to an alleged non-beneficiary of the Timothy Trust does not alter the validity of the conveyance. The bankruptcy court's finding that the tracts in question constituted after-acquired property subject to the mortgage is affirmed.

### (iv)

■ The Washington Institute and Devonshire Lodge next argue that the August 6, 1982 mortgage was invalid because it was not acknowledged at the time it was signed by the Sweattes and the Siebers and because, after obtaining the signatures, Mr. Wills had them acknowledged without the Sweattes and the Siebers being present. The Washington Institute and Devonshire Lodge invoke Okla.Stat. tit. 16 § 15, which states:

> Except as hereinafter provided, no acknowledgement or recording shall be necessary to the validity of any deed, mortgage or contract relating to real estate as between the parties thereto; but no deed, mortgage, contract, bond, lease, or other instrument relating to real estate other than a lease for a period not exceeding one (1) year and accompanied by actual possession shall be valid as

against third persons unless acknowledged and recorded as herein provided. Both of the appellants characterize themselves as third parties against whom the August 6, 1982 mortgage was invalid because it was not properly acknowledged.

The Bank responds by arguing that since the issue of the mortgage's lack of a proper acknowledgement was not raised at the trial level, it may not be considered on appeal. A review of the record indicates that several witnesses at the trial did testify as to the mortgage's lack of an acknowledgement. Nevertheless, in spite of this testimony, the impact of this lack of a proper acknowledgement on the interest of the Washington Institute and Devonshire Lodge in the subject tracts was not raised by any of the parties. Indeed, the sole issue was the validity of the August 6, 1982 mortgage against the Sweattes and the Siebers, both of whom were parties to it. Accordingly, the Court finds that the issue of the impact of the mortgage's lack of proper acknowledgement on the interest of the Washington Institute and the Devonshire Lodge as third parties is not properly before it.[3]

(v)

The Washington Institute and Devonshire Lodge next argue that, the August 6, 1982 mortgage was invalid because there was no mutual consent to it. They identify several circumstances that evince this lack of consent. First, they point to the fact that the mortgage did not specify the amount secured or the date of final payment when the Sweattes and Siebers signed it. Second, they assert that Mr. Will's insertion of the one million dollar sum and the August 11, 1983 due date constituted material alterations of the mortgage to which the Sweattes and Siebers did not agree. Third, they contend that Elaine Sweatte's crossing-out of the

description of one of the tracts transformed the delivery of the signed mortgage to the Bank into a counteroffer. According to the Washington Institute and Devonshire Lodge, the Bank never communicated its acceptance of this counteroffer, and, for this reason as well, there was no mutual consent to the mortgage.

The Bank responds that the mortgage should be read in conjunction with the various promissory notes embodying the debts of the Sweattes, the Siebers, and All American Cars, Inc. When so read, the Bank states, the mortgage contains the necessary terms. Further, according to the Bank, the million dollar sum and the August 11, 1983 due date did not constitute material alterations of the mortgage because they did not alter its legal effect. Finally, the Bank maintains that, if the delivery of the signed mortgage to it by Kelly Sieber is considered a counteroffer, then it communicated its acceptance to the Sweattes and the Siebers.

With regard to the issue of mutual consent, the bankruptcy court found that "the Bank made no representation concerning the binding effect of the mortgage to Kelly Sieber or the defendants Sweatte and that they executed it with full knowledge that a lien was granted to secure payment of all the indebtedness to the Bank." Under Bankruptcy Rule 8013, a bankruptcy court's findings of fact are not to be set aside on appeal unless they are clearly erroneous. *In re Pearson Bros. Co.*, 787 F.2d 1157, 1161–1162 (7th Cir.1986). Due regard is to be given to the bankruptcy court's opportunity to judge the credibility of the witnesses that testify at trial. *Precon, Inc. v. JRS Realty Trust*, 47 B.R. 432, 435 (D.C.Me.1985). Upon review of the record, the Court concludes that these findings of the bankruptcy court are not clear-

---

**3.** Nevertheless, it should be noted that the requirement of section 15 that a mortgage be acknowledged in order to be valid against third parties may not be applicable to the Washington Institute and the Devonshire Lodge. In *Whitehead v. Garrett*, 199 Okl. 278, 185 P.2d 686, 688 (Okla.1947) the Supreme Court of Oklahoma held that the "third persons" referred to in section 15 are "innocent purchasers for value."

Counsel for the appellants stated at the trial that the Timothy Trust conveyed the land in question to the Washington Institute and Devonshire Lodge as a gift. If this was so, then the Washington Institute and Devonshire Lodge would not be purchasers for value and thus not the "third parties" to which the acknowledgement requirement of section 15 applies.

ly erroneous. Thus, in considering the issue of mutual consent, the Court will presume that no representation was made to the Sweattes and the Siebers concerning the binding effect of the mortgage and that the Sweattes and the Siebers signed it with the knowledge that they were granting the Bank a lien.

■ Given these findings of the bankruptcy court, the contention of the Washington Institute and Devonshire Lodge that there was no mutual consent to the mortgage is groundless. In the first place, contrary to the appellants' assertions, the mortgage was not lacking any essential terms when it was signed by the Sweattes and the Siebers. Under the applicable law, a mortgage need not precisely describe the debt it secures. *In re Spears,* 39 B.R. 91, 97–98 (Bankr.E.D.Tenn.1984); *In re Truitt,* 11 B.R. 15, 18–19 (N.D.Ga.1981); *Unger v. Shull,* 154 Okl. 277, 7 P.2d 881, 883 (1932).[4] Rather, it is sufficient if the mortgage indicates the sources of information from which the precise terms of the debt may be determined. *Unger v. Shull,* 7 P.2d at 883. Moreover, the terms of a mortgage are to be interpreted in conjunction with the terms of the promissory note or notes that it secures. *Carpenter v. Riley,* 234 Kan. 758, 675 P.2d 900, 905 (1984); *Herrington v. Murphy,* 446 P.2d 595, 597 (Okla.1968).

In the instant case, when the Sweattes and the Siebers signed the mortgage, the typewritten portion stated that it was taken to secure all the loans of the Sweattes, the Siebers, and All American Cars, Inc. The amount of those loans and the dates when final payment of them was due could be ascertained from the various promissory notes and guarantee agreements executed by the Sweattes, the Siebers, and All American Cars, Inc. Accordingly, the Court finds that the mortgage, when read in conjunction with the notes and agreements setting forth the terms of the indebtedness

of the Sweattes, the Siebers, and All American Cars, Inc., was not lacking in any essential terms when signed.

■ Similarly, the argument of the Washington Institute and Devonshire Lodge that Mr. Wills' insertion of the one million dollar sum and the August 11, 1983 due date constituted material alterations of the mortgage is not supported by the applicable law. Under Oklahoma law, an instrument is deemed to have been materially altered only if it will not have the same legal effect after the alteration as before. *Briggs v. Sarkeys, Inc.,* 418 P.2d 620, 624 (Okla.1966). In this case, the Bank does not contend that million dollar sum or the August 11, 1983 due date created any new obligations not previously owed to it by the Sweattes, the Siebers, and All American Cars, Inc. Instead, the Bank alleges that even after Mr. Wills' insertions, the Sweattes and the Siebers were liable not for one million dollars on August 11, 1983 but for the previously existing indebtedness, the amount of which was specified in the various promissory notes and guarantee agreements (as were the dates when payment was due).

This proposition finds support in the applicable law. In instances of conflict between the terms of a mortgage and the terms of the promissory note or notes that the mortgage secures, the terms of the note control. *Pearll v. Williams,* 146 Ariz. 203, 704 P.2d 1348, 1351 (1985), *Comer v. Hargrave,* 93 N.M. 170, 598 P.2d 213, 214 (1979). Thus, to the extent that the million dollar sum and the August 11, 1983 date differed from the amount and due date of the debt specified in the promissory notes that the August 6, 1982 mortgage secured, they were of no legal effect. Accordingly, the Court concludes that the one million dollar sum and the August 11, 1983 due date added by Mr. Wills did not constitute

---

**4.** The Oklahoma cases cited by the appellants in support of the proposition that the mortgage lacked essential terms are inapposite. In both *Farmers National Bank of Cherokee v. De Fever,* 177 Okl. 561, 61 P.2d 245 (1936) and *First National Bank of Ardmore v. Gillam,* 134 Okl. 237, 273 P. 261 (1927) the Supreme Court of Okla-

homa held only that the handwritten or typewritten portions of a mortgage that specify the debt secured control over printed language stating that a mortgage secures all the mortgagor's debts. Neither case states that the insertion of the amount and due date of a mortgage after it has been signed renders it invalid.

material alterations to the mortgage that rendered it invalid.

■ Finally, the argument of the Washington Institute and Devonshire Lodge that Ruth Elaine Sweatte's crossing out of one of the legal descriptions of the tracts listed in the mortgage transformed the signed mortgage into a counteroffer that was never accepted by the Bank is also without merit. Under Oklahoma law, acceptance of an offer may be expressed by word, sign, writing, or act communicated to the offeror or his agent. *Armstrong v. Guy H. James Construction Co.*, 402 P.2d 275, 277 (Okla. 1965). Moreover, acceptance of a counteroffer may be implied from the offeree's silence. *Midwest Engineering & Construction Co. v. Electric Regulator Corp.*, 435 P.2d 89, 96 (Okla.1967). In the instant case, although the Bank did not send the Sweattes and the Siebers any written notification that it was accepting the mortgage as modified by Elaine Sweatte, it did accept delivery of the mortgage from Kelly Sieber. In addition, Mr. Wills filed the mortgage and the Bank relied on it in bringing foreclosure proceedings. This Court agrees with the bankruptcy court that, taken as a whole, these actions constituted a sufficient expression of the Bank's intent to accept the mortgage as modified by Ruth Elaine Sweatte.

### (vi)

■ The Washington Institute and Devonshire Lodge next argue that the mortgage was not supported by adequate consideration. According to them, consideration was lacking because the amount of the mortgage, the property to be pledged, and the time for payment of the debt were not bargained for. They urge that the mortgage be declared invalid for this reason as well.

This argument is also misguided. Under Oklahoma law, a pre-existing debt is adequate consideration to support a mortgage given as security for that debt. *A & S Distributing Co. v. Nall-Tucker, Inc.*, 428 P.2d 254, 257 (Okla.1967). The giving of consideration contemporary with the execution of the mortgage is thus not required. *Id.* at 257. Accordingly, the Court finds that the debt owed the Bank by the Sweattes, the Siebers, and All American Cars, Inc. prior to the execution of the August 6, 1982 mortgage was sufficient consideration for the mortgage.

■ Moreover, even if the appellants were correct in asserting that consideration contemporary with the execution of the mortgage was required, the mortgage would still not be invalid. Under Oklahoma law, forbearance of a right constitutes sufficient consideration for a contract. *Agristor Credit Corporation v. Unruh*, 571 P.2d 1220, 1223 (Okla.1977); *A & S Distributing Co. v. Nall-Tucker, Inc.*, 428 P.2d at 257. In the instant case, the bankruptcy court found that "[t]he evidence indicates that had the mortgage not been executed, the bank would have promptly initiated its rights of repossession and foreclosure" and that "[b]ecause the mortgage was executed, the Bank forbore these remedies." From a review of the record, the Court does not find these factual findings to be clearly erroneous.[5] Accordingly, the Court finds that the Bank's forbearance also constituted sufficient consideration for the August 6, 1982 mortgage.

### (vii)

■ Finally, the Washington Institute and Devonshire Lodge argue that because the mortgage did not state the amount of the debt or the date when final payment of the underlying debt was due, it did not comply with the Statute of Frauds. They invoke Okla.Stat. tit. 46 § 3, which sets

---

**5.** The Court is not persuaded by the argument of the Washington Institute and Devonshire Lodge that any forbearance from suit on the part of the Bank cannot be deemed consideration because such forbearance is not set out in the mortgage itself. This argument ignores the principle that a mortgage is to be read in conjunction with the promissory notes it secures. *Herrington v. Murphy*, 446 P.2d at 597. From the terms of these notes and from the fact that the Bank did not sue on the notes after the mortgage was executed, the Bank's forbearance can be ascertained.

forth a form for mortgages on real estate. They observe that this form includes statements as to the amount of the debt secured and the terms of payment of the debt. They also cite Okla.Stat. tit. 16 § 4, which states (in part):

No deed, mortgage, or conveyance of real estate or any interest in real estate, other than a lease for a period not to exceed one (1) year, shall be valid unless in writing and signed by the grantors.

Like the appellants' argument on the issue of mutual consent, this argument ignores the principle that a mortgage is to be read in conjunction with the promissory note or notes that embody the debt secured by the mortgage. *Herrington v. Murphy*, 446 P.2d at 597. As noted above, the Sweattes, the Siebers, and All American Cars, Inc. signed a series of promissory notes and guarantee agreements that set forth the amount of the debt and the dates when payment was due. Since the August 6, 1982 mortgage states that it secures all of the indebtedness of the Sweattes, the Siebers, and All American Cars, Inc., the terms of these notes and agreements were incorporated into the mortgage. Thus, as the bankruptcy court concluded, the August 6, 1982 mortgage when read in conjunction with the accompanying notes and agreements, contains all the terms required by the Statute of Frauds.

Accordingly, for the reasons stated above, the Court finds that the August 6, 1982 mortgage created a valid lien on the property that it describes (excluding the tract whose description was crossed out by Ruth Elaine Sweatte). The decision of the bankruptcy court is affirmed.