844 P.2d 657

**LA CHOLLA GROUP, INC., an Arizona corporation, Plaintiff/Appellant,**

v.

**Roger P. TIMM and Chloe A. Timm, husband and wife, Defendants/Appellees.**

**No. 2 CA–CV 91–0179.**

Court of Appeals of Arizona, Division 2, Department B.

Nov. 17, 1992.

Reconsideration Denied Jan. 6, 1993.

Ethan Steele and Jeffrey M. Neff, Tucson, for plaintiff/appellant.

Lance E. Perna, Phoenix, for defendants/appellees.

## OPINION

FERNANDEZ, Judge.

Appellant La Cholla Group, Inc. appeals from the trial court's entry of summary judgment in favor of appellees Roger and Chloe Timm. Appellant asserts error in the court's assignment of priorities to the parties' respective liens on certain real property.

La Cholla is the successor in interest to the holder of a deed of trust on certain real property located in Pima County, Arizona. The La Cholla deed of trust secured payment of a promissory note in the amount of $30,000 due on or before October 1, 1989. The deed of trust provides that it is executed for the purpose of securing, among other things, "[p]ayment of additional sums and interest thereon which may hereafter be loaned to Trustor, or his successors or assigns, when evidenced by a promissory note or notes reciting that they are secured by this Deed of Trust." The deed further provides:

IT IS MUTUALLY AGREED:

... Without affecting the obligation of Trustor to pay and perform as herein required; without affecting the personal liability of any person for payment of the indebtedness secured hereunder and without affecting the lien or priority of lien hereof on the Trust Property, Beneficiary may, at its option, extend the time for payment of said indebtedness, or any part thereof, reduce the payment thereon, release any person liable on any of said indebtedness, accept a renewal note therefor, modify the terms of said indebtedness, take or release other or additional security, or join in any extension or subordination agreement. Any such action by Beneficiary or the trustee at Ben-

eficiary's direction may be taken without the consent of any junior lienholder, and shall not affect the priority of this Deed of Trust over any junior lien.

The deed of trust was dated October 26, 1988, and recorded November 7, 1988. A subsequent deed of trust executed in favor of the Timms on the same property as security on a $15,000 note was recorded November 17, 1988. The promissory note underlying the La Cholla deed of trust was later modified to increase the principal amount to $41,000, increase the interest rate, reduce the monthly payments, and extend the maturity date to December 12, 1993. The modification agreement provided that the remaining terms of the original note and security agreement were to remain unchanged.

The La Cholla deed of trust subsequently was foreclosed by a trustee's sale. Despite being given notice of the sale, the Timms took no action to protect their interest in the property. The Timms contend, however, that the modifications to the La Cholla agreement effectively subordinated all or a portion of the La Cholla deed of trust to the Timm deed of trust and, therefore, that the title acquired pursuant to the sale is subject to the Timm deed.

La Cholla sued to determine the priority of the respective liens, and the trial court granted summary judgment in favor of the Timms, finding that the modifications were prejudicial and invalid against subsequent lienholders. The court ordered that the relative positions of the parties' liens be reversed. After its motion for new trial was denied, La Cholla filed a timely notice of appeal. La Cholla contends the trial court erred in refusing to recognize the validity of the dragnet clause in its deed of trust.

■ Arizona courts have long recognized that a trust deed or mortgage given to secure an indebtedness may include advances to be made in the future. *Griffith v. State Mutual Building and Loan Association*, 46 Ariz. 359, 51 P.2d 246 (1935); *Pearll v. Williams*, 146 Ariz. 203, 704 P.2d 1348 (App.1985). A clause authorizing

such advances is commonly known as a "dragnet" clause. *See Pearll, supra.* In *Griffith,* our supreme court recognized that "such a provision is good as against all subsequent encumbrancers and purchasers having notice of the mortgage, for all advances made *before* they have acquired their rights...." 46 Ariz. at 363, 51 P.2d at 248 (emphasis added). We address an issue of first impression, however, in determining the relative priority of advances made after a subsequent creditor records a lien against the property.

■■■ The general rule appears to be that, as to obligatory advances where the existence of the mortgagee's obligation to advance funds is of record, the advances have priority over any intervening liens. *E.g., Kimmel v. Batty,* 168 Colo. 431, 451 P.2d 751 (1969); *Idaho First National Bank v. Wells,* 100 Idaho 256, 596 P.2d 429 (1979). If an advance is optional, however, and if the first mortgagee has notice when the advance is made that a subsequent creditor has acquired an interest in the security, the advance loses its priority to that creditor. *Idaho First National Bank, supra; Bank of Ephraim v. Davis,* 559 P.2d 538 (Utah 1977). Conversely, if the first mortgagee has no notice of a subsequent encumbrance, an optional advance will take priority regardless of whether it was made before the intervening lien attached. *See Bank of Ephraim.* In this regard, constructive notice such as that derived from recording statutes generally is held not sufficient to impute knowledge of an intervening lien. *Freese Leasing v. Union Trust & Savings Bank,* 253 N.W.2d 921 (Iowa 1977); *Potwin State Bank v. J.B. Houston & Son Lumber Company,* 183 Kan. 475, 327 P.2d 1091 (1958); *Bank of Ephraim, supra.* As the Utah Supreme Court has observed, "[t]he rationale supporting this rule declares the first mortgagee should not be bound to search the records, from day to day, to learn whether his mortgagor has made any further encumbrances, or to ascertain that of which notice must be given·him by the persons interested." *Bank of Ephraim,* 559 P.2d at 541.

The Timms make no valid argument against Arizona's adoption of the common law obligatory/optional rule. While some authorities have criticized the uncertainty and application of the rule when courts are called on to determine whether an advance is in fact obligatory or optional, we believe the policy arguments in favor of the rule outweigh the concerns over judicial interpretation.

First, by giving absolute priority to recorded obligatory advances, the rule provides security to lenders who are under contractual obligations to advance funds even if the borrower has subsequently overencumbered the collateral. *See* Comment, *Priority Disputes in Future Advance Mortgages: Picking the Winner in Arizona,* 1985 Ariz.St.L.J. 537. In addition, if optional advances were given an absolute preference, "the mortgagor, although having no right to demand the contemplated additional loan funds, would be unable to obtain financing elsewhere for no one else would lend on a security which could be cut down by subsequent action by the first mortgagee." G. Nelson and D. Whitman, *Real Estate Finance Law,* § 12.7, at 887 (2d ed. 1985). Finally, by awarding priority only to obligatory advances disclosed on the title record, secondary creditors are given notice of the full extent of encumbrances on the property prior to extending credit against it. *Priority Disputes in Future Advance Mortgages, supra.* In a nutshell,

> the obligatory/optional advance distinction can be useful to all parties concerned in future advance financing. Lenders may safely obligate themselves to advance funds and thereby practically assure themselves of future business with the borrower; or they may retain more control over the loan by promising future advances only if the circumstances warrant. Likewise, borrowers may seek the certainty of obligatory advances or the freedom (and perhaps lower cost) of optional advances. And insofar as borrowers choose the latter, secondary creditors have access to a segment of the loan market that would be

unavailable to them under either traditional or obligatory advance mortgages. *Id.* at 547 (footnotes omitted).

■ Having determined that the obligatory/optional rule should be adopted in Arizona, we turn to its application to this case. Here, the parties agree that the modification at issue constituted a nonobligatory advance. Accordingly, in order for the Timms to prevail on a motion for summary judgment, they must establish through undisputed facts that the notice requirement set forth above was met. The Timms have not even alleged, however, much less established, that either La Cholla or its predecessor had actual knowledge of their intervening lien. The Timms instead contend only that La Cholla did not argue its lack of notice in the trial court. Contrary to their contention, the lack of a specific argument in the trial court regarding notice is not fatal to La Cholla's position on appeal. Summary judgment is appropriate when the record before the trial court shows that there is no genuine dispute as to any material fact, that only one inference can be drawn from the undisputed facts, and that the moving party is entitled to judgment as a matter of law. Rule 56(c), Ariz.R.Civ.P., 16 A.R.S.; *Orme School v. Reeves,* 166 Ariz. 301, 802 P.2d 1000 (1990). Thus, even if La Cholla had not responded at all to the Timms' motion for summary judgment, the facts as alleged were insufficient as a matter of law to support the judgment entered.

■ The Timms further argue, however, that summary judgment was appropriate because the modification was not made pursuant to the terms of the deed of trust. Specifically, the Timms contend that the additional sums were not "evidenced by a promissory note or notes reciting that they are secured by [the] Deed of Trust." We find no merit to the Timms' position as the modification agreement specifically refers to the original promissory note and security agreement. In fact, the Timms concede that the advance was simply a modification of the original note and security agreement. The Timms further concede that the language of the deed may authorize some modification but contend that the modifica-

tions as made "were of such a prejudicial nature that they were not protected by the language in the deed of trust authorizing subsequent changes." The Timms have not provided, however, nor have we found, any support for the proposition that the validity of a dragnet clause is determined by the degree of prejudice suffered by junior lienholders. Their reliance on *Citizens & Southern National Bank of South Carolina v. Smith,* 277 S.C. 162, 284 S.E.2d 770 (1981), in support of their position is misplaced.

In *Citizens & Southern,* the court was not asked to determine the validity of a dragnet clause. Rather, in that case, a purchase money mortgagor agreed to subordinate his mortgage in order for the developers to obtain a bank loan to develop the land. The terms of the subordination agreement provided that when the development mortgage was satisfied, the purchase money mortgage would regain its priority. The bank and the developer subsequently extended the time for payment on the development mortgage without the purchase money mortgagor's knowledge or consent. In determining that the bank lost its priority by virtue of the extension, the court noted that because a purchase money mortgage will ordinarily be given priority over other security instruments in realty, a subordination agreement will be strictly limited by its express terms. The court concluded that if the terms of the debt are materially altered without the subordinated mortgagor's consent, the priority of the mortgages will be reversed.

In contrast, in this case, the Timms had constructive notice of the terms of the La Cholla security agreement and, accordingly, the opportunity to protect their interest by giving notice to La Cholla or its predecessor of their intervening encumbrance. The Timms could not simply ignore the provisions of the La Cholla deed but were bound to know that future advances might be made. *See Potwin State Bank v. J.B. Houston & Son, supra.*

■ For the foregoing reasons, we find the trial court erred in granting summary judgment in favor of the Timms. We re-

verse and remand for further proceedings consistent with this decision.[1] La Cholla will be awarded its costs and attorneys' fees on appeal upon compliance with Rule 21(c), Ariz.R.Civ.App.P., 17B A.R.S.

DRUKE, P.J., and HATHAWAY, J., concur.

---

**1.** Because the issue of the appropriate remedy will need to be addressed should it be established that either La Cholla or its predecessor had actual notice of the Timm lien, we note that there is no support for the Timms' position that the entire La Cholla lien should be subordinat- ed. Rather, the general rule appears to be that, upon actual notice of an intervening encumbrance, subsequent advances will be subordinated while the original lien maintains priority. *See Idaho First National Bank v. Wells, supra.*